**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 1, 2005**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                 No. 125483

RUSSELL DOUGLAS TOMBS,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

KELLY, J.

This case requires us to consider whether MCL 750.145c(3), which prohibits the distribution or promotion of child sexually abusive material, requires that the distribution or promotion be performed with criminal intent. If criminal intent is an element of the offense, we must determine also whether the prosecutor presented sufficient evidence to prove that defendant possessed it.

We agree with the Court of Appeals that MCL 750.145c(3) requires that an accused be shown to have had criminal intent to distribute or promote. We also agree that the evidence presented to the trial court was

insufficient to prove that intent. Therefore, we affirm the decision of the Court of Appeals that reversed defendant's conviction for distributing and promoting child sexually abusive material.

## I. FACTS AND PROCEDURAL HISTORY

Defendant was a field technician for Comcast OnLine, an organization that sells cable Internet access to business and residential customers. Field technicians install Internet cable service and perform troubleshooting when a customer encounters difficulty in accessing the Internet.

Comcast furnished defendant with a company van and a laptop computer for employment-related use. Before the laptop was issued to defendant, the hard drive was reformatted so that it contained only company-sanctioned software programs.

On August 9, 2000, a Wednesday, defendant quit his employment with Comcast. He told Christopher Williams, another Comcast employee, that he would return the company's equipment and van on the weekend. Williams initially told defendant that this would be acceptable, but called defendant a second time and advised him that the equipment had to be returned that day.

Williams retrieved the items from defendant approximately an hour after the telephone conversation. He returned the laptop to Comcast's office and began to reformat it. Although it was not required in the formatting, he ran a search for JPG files, files containing pictures, "[j]ust to see what was on it." He found several and opened one. It contained adult pornography. Williams looked further and came across a picture of a partially naked young girl.

Because of his discovery, Williams gave the computer to Carl Radcliff, a data support technician for Comcast. Radcliff also ran a search for JPG files. He eventually found "a series of child pornography." Radcliff indicated that the pornographic material was not in a readily available location, but was "buried inside of what's known as a user profile."

The laptop was later turned over to the police. Detective Edward Stack of the St. Clair Shores Police Department testified that he and another detective found images of child pornography on it. Sergeant Joseph Duke, the supervisor of the Computer Crimes Unit of the Oakland County Sheriff's Department, counted over five hundred images on the computer that he believed qualified "as either child sexually abusive material or child erotica."

3

Sergeant Duke believed that the photographs had been downloaded from the Internet. He indicated that the files had been difficult for him to find because they were buried in subfolders seven directory levels down. He testified that "[a]s an investigator and as an examiner, it's kind of a red flag when I have to go down through 7 directory levels to get to evidence." When asked why this raises a red flag, Sergeant Duke said it indicates that the data are being hidden.

Because of the discovery of child pornography, and because there were two minor children living in defendant's home, David Joseph, a children's protective services worker with the Family Independence Agency,[1] interviewed defendant. Joseph testified that defendant told him that, when a Comcast employee leaves employment, new programs are installed in that employee's computer. Defendant indicated that he did not think anybody would go through the files he had created there. He presumed that the hard drive would simply be wiped clean before installation of new software.

Defendant admitted to Joseph that he had obtained the photographs "from the Internet and from sharing with others." Joseph also said that it was his impression from

_____

[1] Family Independence Agency is now the Department of Human Services.

talking with defendant that defendant had taken part in an Internet club that exchanged child pornography.

A jury convicted defendant of (1) distributing or promoting child sexually abusive material, MCL 750.145c(3); (2) possessing the material, MCL 750.145c(4); and (3) using the Internet or a computer to communicate with people for the purpose of possessing the material, MCL 750.145d.[2] In a published opinion, the Court of Appeals reversed defendant's conviction for distributing or promoting child sexually abusive material under MCL 750.145c(3) and affirmed his other convictions. 260 Mich App 201; 679 NW2d 77 (2003). The prosecutor appeals the reversal to this Court. 470 Mich 889 (2004).

## II. STANDARD OF REVIEW AND STATUTORY CONSTRUCTION

Issues of statutory interpretation, like questions of law, are reviewed de novo. *People v Koonce*, 466 Mich 515, 518; 648 NW2d 153 (2002). In interpreting a statute, our goal is to ascertain and give effect to the Legislature's intent. *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999). Where the language of the statute is unambiguous,

---

[2] On appeal to us, defendant did not challenge his convictions under MCL 750.145c(4) or MCL 750.145d. Therefore, this Court takes no position on whether the facts are sufficient to support convictions under those provisions.

5

the Court presumes that the Legislature intended the meaning expressed. *Id.*

Accordingly, to determine whether a statute imposes strict liability or requires proof of a guilty mind, the Court first searches for an explicit expression of intent in the statute itself. See *People v Quinn*, 440 Mich 178, 185; 487 NW2d 194 (1992).

Normally, criminal intent is an element of a crime. *People v Rice*, 161 Mich 657, 664; 126 NW2d 981 (1910). Statutes that create strict liability for all their elements are not favored. *Quinn*, 440 Mich at 187. Hence, we tend to find that the Legislature wanted criminal intent to be an element of a criminal offense, even if it was left unstated.

III. CRIMINAL INTENT IS AN ELEMENT OF MCL 750.145c(3)

The statutory provision under consideration, MCL 750.145c(3), reads in relevant part:

> A person who distributes or promotes, or finances the distribution or promotion of, or receives for the purpose of distributing or promoting, or conspires, attempts, or prepares to distribute, receive, finance, or promote any child sexually abusive material or child sexually abusive activity is guilty of a felony, punishable by imprisonment for not more than 7 years, or a fine of not more than $50,000.00, or both, if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive

6

> material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child. This subsection does not apply to the persons described in section 7 of 1984 PA 343, MCL 752.367.

The question presented is whether, to be convicted under the statute, a defendant must possess the criminal intent to distribute or promote child pornography.

Considering solely the statute's words, it is apparent that criminal intent, *mens rea*, is not explicitly required. The only specific knowledge requirement is that the defendant knew that the sexually abusive material included or appeared to include a child.

### IV. UNITED STATES SUPREME COURT PRECEDENT

The United States Supreme Court has addressed the issue whether a criminal intent element should be read into a statute where it does not appear. *Morissette v United States*, 342 US 246; 72 S Ct 240; 96 L Ed 288 (1952). In *Morissette*, the defendant took spent shell casings from a government bombing range and sold them for salvage. The defendant was convicted of converting government property despite evidence suggesting that he had no criminal intent to steal anything and thought the property abandoned. The trial court instructed the jury that a lack of criminal intent was not a defense to the charge. *Id.* at 247-249.

In reviewing the case, the *Morissette* Court began with the proposition that criminal offenses that do not require

7

a criminal intent are disfavored. Liability without criminal intent will not be found in the absence of an express or implied indication of congressional intent to dispense with the criminal intent element. *Id*. at 250-263. *Morissette* stated:

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory "But I didn't mean to," and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution. Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that to constitute any crime there must first be a "vicious will." Common-law commentators of the Nineteenth Century early pronounced the same principle . . . .
>
> Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand, was congenial to an intense individualism and took deep and early root in American soil. As the states codified the common law of crimes, even if their enactments were silent on the subject, their courts assumed that the omission did not signify disapproval of the principle but merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation. Courts, with little hesitation or division, found an implication of the requirement as to offenses that were taken over from the common law. The unanimity with which they have

adhered to the central thought that wrongdoing must be conscious to be criminal is emphasized by the variety, disparity and confusion of their definitions of the requisite but elusive mental element. However, courts of various jurisdictions, and for the purposes of different offenses, have devised working formulae, if not scientific ones, for the instruction of juries around such terms as "felonious intent," "criminal intent," "malice aforethought," "guilty knowledge," "fraudulent intent," "wilfulness," "*scienter*," to denote guilty knowledge, or "*mens rea*," to signify an evil purpose or mental culpability. By use or combination of these various tokens, they have sought to protect those who were not blameworthy in mind from conviction of infamous common-law crimes. [*Id.* at 250-252.]

The Court then considered the history and purpose of the federal statute at issue and determined that there was no indication that Congress wanted criminal intent eliminated from the offense. *Id* at 265-269.

The *Morissette* Court noted the longstanding presumption that all crimes require criminal intent. It held that Congress's failure to include a criminal intent element did not signal a desire to preclude the need to prove criminal intent. Rather, the omission of any mention of criminal intent was not to be construed as eliminating the element from the crime. *Id*. at 272-273.

Since the *Morissette* decision, the United States Supreme Court has reiterated that offenses not requiring criminal intent are disfavored. The Court will infer the presence of the element unless a statute contains an

9

express or implied indication that the legislative body wanted to dispense with it. Moreover, the Court has expressly held that the presumption in favor of a criminal intent or *mens rea* requirement applies to each element of a statutory crime.

In *Staples v United States*,[3] the Court interpreted a federal statute that makes it a crime to possess an unregistered weapon capable of automatic firing. The Court noted that silence with respect to criminal intent does not, by itself, "necessarily suggest that Congress intended to dispense with a conventional *mens rea* element, which would require that the defendant know the facts that make his conduct illegal." *Staples,* 511 US at 605.

The Court observed that the existence of *mens rea* "'is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.'" *Id.,* quoting *United States v United States Gypsum Co*, 438 US 422, 436; 98 S Ct 2864; 57 L Ed 2d 854 (1978). It held that silence did not suggest that Congress intended to eliminate a *mens rea* requirement from the National Firearms Act. *Staples* said:

> On the contrary, we must construe the statute in light of the background rules of the

---

[3] 511 US 600; 114 S Ct 1793; 128 L Ed 2d 608 (1994).

common law, in which the requirement of some *mens rea* for a crime is firmly embedded. . . .

There can be no doubt that this established concept has influenced our interpretation of criminal statutes. Indeed, we have noted that the common-law rule requiring *mens rea* has been "followed in regard to statutory crimes even where the statutory definition did not in terms include it." Relying on the strength of the traditional rule, we have stated that offenses that require no *mens rea* generally are disfavored, and have suggested that some indication of congressional intent, express or implied, is required to dispense with *mens rea* as an element of a crime. [*Staples*, 511 US at 605-606 (citations omitted).]

In *United States v X-Citement Video, Inc*,[4] the United States Supreme Court applied the *mens rea* rule to a federal statute prohibiting child pornography. The statute made it illegal to "knowingly transport[] or ship[]" or "knowingly receive[] or distribute[]" any visual depiction involving the use of a minor engaging in sexually explicit conduct. 18 USC 2252. The Court was required to determine whether the term "knowingly" as used in the section also modified the phrase "use of a minor." The Court undertook to determine whether the defendant must knowingly transport the material and must know that it depicted a minor engaged in sexually explicit conduct.

The *X-Citement Video* Court presumed that *mens rea* must be shown to obtain a conviction, there being no clear

---

[4] 513 US 64; 115 S Ct 464; 130 L Ed 2d 372 (1994).

11

congressional intent that strict liability should be imposed. It held that Congress must have intended that an accused transported the material knowingly and had knowledge of its nature to be guilty of the crime. *X-Citement Video*, 513 US at 78. The Court noted that this reading was necessary because "some form of scienter is to be implied in a criminal statute even if not expressed" and because "a statute is to be construed where fairly possible so as to avoid substantial constitutional questions." *Id.* at 69.

## V. APPLICATION OF PRECEDENT TO RESOLVE THE CRIMINAL INTENT QUESTION

We apply this Supreme Court precedent to the case before us. No *mens rea* with respect to distribution or promotion is explicitly required in MCL 750.145c(3). Absent some clear indication that the Legislature intended to dispense with the requirement, we presume that silence suggests the Legislature's intent not to eliminate *mens rea* in MCL 750.145c(3).

The Court of Appeals correctly reached this conclusion. The most applicable dictionary definition of "distribute" implies putting items in the hands of others as a knowing and intentional act.[5] Likewise, the terms

---

[5] "Distribute: to divide and give out in shares; allot. To pass out or deliver: to distribute pamphlets."
(continued…)

12

"promote" and "finance," and the phrase "receives for the purpose of distributing or promoting" contemplate knowing, intentional conduct on the part of the accused.

The use of these active verbs supports the presumption that the Legislature intended that the prosecution prove that an accused performed the prohibited act with criminal intent. If we held otherwise, not only would it be illogical, we would create a questionable scheme of punishment: One who, with criminal intent, possessed child sexually abusive material would be subject to a lesser punishment than someone who, without criminal intent, passed along such material to others.[6]

The Court of Appeals holding that the prosecution must prove criminal intent to distribute or promote fully implements the goal of the legislative scheme. It also

_____

(…continued)
*The Random House College Dictionary* (2001) "[T]o give out or deliver especially to members of a group <distribute newspapers>." *Merriam-Webster OnLine Dictionary* <http://www.m-w.com> (accessed April 15, 2005). "[T]o divide (something) among several or many people, or to spread or scatter (something) over an area." *Cambridge Dictionary of American English* (Online version) <http://www.dictionary.cambridge.org> (accessed April 15, 2005).

[6] The maximum penalty for violating MCL 750.145c(3), distributing or promoting child sexually abusive material, is seven years in prison and a fine of $50,000. The maximum penalty for possessing child sexually abusive material, MCL 750.145c(4), is four years in prison and a $10,000 fine. When defendant was convicted, MCL 750.145c(4) provided for imprisonment of one year.

13

avoids substantial constitutional questions. The fact, standing alone, that the Legislature did not affix the term "knowingly" to the distribution or promotion element does not mean that the Legislature intended a strict liability standard.

As the United States Supreme Court explained in *X-Citement Video*,[7] if there were no *mens rea* element respecting the distribution of the material, the statute could punish otherwise innocent conduct. For instance, a person might accidentally attach the wrong file to an e-mail sent to another. The person might intend to send an innocent photograph, but accidentally send a pornographic photograph of a child instead. Also, the person might not intend that the recipient recognize or even see the material that he transferred.

If the statute contained no *mens rea* element, a person lacking any criminal intent could be convicted and sentenced to seven years in prison and a fine of $50,000. Or, as in the present case, he could be found criminally liable for returning a laptop owned by his employer, intending only that the offending material be destroyed.[8]

---

[7] 513 US at 69.

[8] The dissent claims that evidence of intent is found in the fact that defendant returned the laptop containing

(continued…)

14

If this were the law, Comcast employees who transferred defendant's JPG computer files among themselves and ultimately to the police, knowing what was in them, would have violated MCL 750.145c(3). It would be immaterial that they had no criminal intent. Such a reading of the statute would frustrate its purpose.[9]

For all of the reasons given, we conclude that the Legislature intended that criminal intent to distribute be an element of MCL 750.145c(3).

---

(…continued)
the offending material. There is evidence that defendant intended to distribute the laptop to Comcast, but there is no *evidence* of a criminal intent on his part to distribute child sexually abusive material. In fact, all the evidence points to the contrary conclusion, that defendant did not distribute the material with a criminal intent. He returned the laptop to his former employer as required and with the expectation that his former employer would not search for and find the child sexually abusive material. This is further supported by the fact that the material was hidden in subfolders seven directory levels down.

[9] The dissent insists that these Comcast employees could be convicted under our reading of MCL 750.145c(3), *post* at 5 n 6. It appears to miss the distinction between intent to commit an act, such as returning another's personal property, and intent to commit a crime, a "guilty mind." The Comcast employees intended to report a suspected crime. They did not intend to illegally distribute child sexually abusive material.

The dissent states that, in other statutes, the Legislature has taken steps to prevent the prosecution of people who lack criminal intent. But it fails to show how those statutes are relevant to the issue before us, which is whether MCL 750.145c(3) includes criminal intent as an element.

15

## VI. The Evidence is Insufficient to Support a Conviction for Distributing Child Sexually Abusive Material

The next question is whether the prosecution proved that defendant had the criminal intent to distribute or promote child sexually abusive material. Due process requires proof of intent beyond a reasonable doubt. *People v Petrella*, 424 Mich 221, 268; 380 NW2d 11 (1985). When determining if sufficient evidence was presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution. It must determine whether any rational trier of fact could have found that the essential elements of the crime were proven as required. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992).

### A. Return of the Laptop to Comcast

Although defendant intended to distribute the laptop containing child sexually abusive material to his former employer, no evidence suggests that he distributed the material with a criminal intent. There was no evidence that defendant made anyone at Comcast aware, or attempted to make anyone aware, of the presence of the material. To the contrary, there is evidence that defendant neither intended nor expected anyone at Comcast to discover or view the material.

16

Comcast witnesses acknowledged that the computer hard drive could be erased and reformatted without any of its files being reviewed. Mr. Williams admitted that this was the practice at Comcast and that defendant himself may have previously performed such erasures on returned computers.

Williams admitted that he looked through defendant's files because "I just wanted to see what was on there," not because it was necessary. Williams further testified that he did not tell defendant when he arranged to pick up the computer that he intended to look at any of his files. Another witness testified that the practice at Comcast was simply to wipe the hard drives of all information and reformat them.

From the testimony, one could reasonably conclude that defendant anticipated that no one at Comcast would review his files. His statement to FIA investigators was that he thought the entire hard drive would be merely erased and reformatted. Viewed most favorably to the prosecution, the record contains nothing from which to reasonably infer that defendant intentionally left the material on the laptop for Comcast's employees to discover.

The dissent questions the relevancy of the fact that defendant did not intend anybody to discover or view the material. As explained above, defendant could be convicted

of distributing child sexually abusive material only if he distributed the material with a criminal intent. Obviously, if defendant distributed the material not intending anybody to discover or view it, he did not distribute it with a criminal intent.

Defendant returned the computer, as he was required to do, to individuals who possibly knew how to find the information. This does not change the fact that defendant concealed the images. Nor does it change the fact that, on the basis of past company practice, defendant legitimately believed that those individuals would not search the computer for picture files. That someone had the ability and desire to search for the material defendant purposefully concealed does not affect the analysis of defendant's state of mind. The actions of a third party could not create a criminal intent in the mind of defendant.

In addition to defendant's statement to the FIA, substantiation for the inference that there was no *mens rea* is found in the testimony of prosecution witness Radcliffe. He said that the photos were buried deep in a user profile, not in a readily available location. Likewise, Sergeant Duke testified that, in his opinion, the location, seven

18

directory levels down, indicated that defendant intended to keep the material secret.

Hence, insufficient evidence existed from which the jury could draw an inference beyond a reasonable doubt that, when returning the laptop, defendant distributed child sexually abusive material with criminal intent. We avoid the dissent's error of conflating the criminal intent to distribute child sexually abusive material with the simple intent to return the laptop.

### B. DEFENDANT'S INTERNET ACTIVITY

The prosecutor made the alternative argument that defendant distributed child sexually abusive material over the Internet. However, the jury acquitted him of that crime. It specifically found that defendant did not use a computer or the Internet to communicate with another person to distribute or promote child sexually abusive material. MCL 750.145d. It found him guilty only of using a computer or the Internet to communicate with another person in order to possess child sexually abusive material. *Id*.

We apply the same reasoning regarding this argument as did the Court of Appeals:

> Given the prosecutor's theory that defendant distributed child sexually abusive material by returning to Comcast the computer containing such material and the jury's verdict of acquittal on the charge of using a computer to distribute or promote such material, we conclude that

19

defendant's conviction solely rests upon the theory primarily advanced by the prosecution at trial: that defendant distributed child sexually abusive material by returning to Comcast a computer that contained such material. Accordingly, our review of the sufficiency of the evidence is limited to the theory that resulted in defendant's conviction. [260 Mich App at 208.] [Emphasis added.]

In his concurrence, Chief Justice Taylor concludes that there was sufficient evidence for the jury to convict defendant of distributing child sexually abusive material. The basis for the conviction could have been that he shared such material with others on the Internet. The concurrence acknowledges that the jury specifically acquitted defendant of using a computer to distribute such material, but it observes that jury verdicts need not be consistent.

We reason that, although inconsistent jury verdicts may be legally permissible, it does not follow that we should find verdicts inconsistent when it is possible to find them consistent. See *Lagalo v Allied Corp,* 457 Mich 278, 282; 577 NW2d 462 (1998) ("'[i]f there is an interpretation of the evidence that provides a logical explanation for the findings of the jury, the verdict is not inconsistent.'") (Citation omitted.)

There is no disagreement that, here, the jury specifically acquitted defendant of using a computer to distribute child sexually abusive material, and it

20

convicted him of distributing such material. It could have found him guilty of distributing the material in one of two ways: (a) finding that he shared the material with others on the Internet, or (b) finding that he distributed it by returning the computer to Comcast. The former would be inconsistent with the jury's verdict concerning the "use of a computer to distribute child sexually abusive material" charge; the latter would not be. Because we presume that the verdicts are consistent, we conclude that the jury convicted defendant of distributing the material by returning the computer to Comcast.[10]

## VII. THERE IS INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION FOR PROMOTING CHILD SEXUALLY ABUSIVE MATERIAL

It is without dispute that defendant possessed child sexually abusive material that he had obtained over the Internet. The prosecution contends that possessing the material is the legal equivalent of promoting it for purposes of MCL 750.145c(3).

MCL 750.145c(3) reads:

---

[10] The concurring justice mistakes defense of our analysis for a criticism of his unanimity argument. Rather than criticize the argument, we simply find that there is no reason to consider the unanimity issue. The jury specifically acquitted defendant of using a computer or the Internet to distribute child sexually abusive material. This conclusive determination precludes reliance on the rationale that the conviction for distribution was based on defendant's Internet activity. We need go no further.

21

A person who *distributes or promotes*, or finances the distribution or promotion of, or receives for the purpose of distributing or promoting, or conspires, attempts, or prepares to distribute, receive, finance, or promote any child sexually abusive material or child sexually abusive activity is guilty of a felony, punishable by imprisonment for not more than 7 years, or a fine of not more than $50,000.00, or both . . . . [Emphasis added.]

MCL 750.145c(4) reads:

A person who knowingly *possesses* any child sexually abusive material is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $10,000.00, or both,[11] if that person knows, has reason to know, or should reasonably be expected to know the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child. [Emphasis added.]

Possession is not the same as promotion. The prosecutor blurs the two, asserting that by obtaining the material from the Internet, defendant promoted it. To accept that argument, this Court would have to ignore the express language of the Legislature that created a graduated scheme of offenses and punishments regarding child sexually abusive material.

_____

[11] MCL 740.145c(4) was amended after defendant's trial. Formerly, a violation of this provision was punishable as a misdemeanor.

The Legislature expressly separated the crimes of production of child sexually abusive material,[12] distribution or promotion of the material, and simple possession. It would not have made the distinction had it intended to equate mere possession with promotion.

If the Legislature had wanted end-users of the material to be guilty of promoting such material merely because they possess it, MCL 750.145c(4) would have included promotion. Alternatively, the Legislature would have equated possession with both distribution and promotion in MCL 750.145c(3) instead of creating a separate provision for possession in § 145c(4). The statute on its face makes the mere possession of child sexually abusive material a different and less severe offense than either distribution or promotion of the material.

## VIII. CONCLUSION

We hold that, to convict a defendant of distribution or promotion under MCL 750.145c(3), the prosecution must prove that (1) the defendant distributed or promoted child sexually abusive material, (2) the defendant knew the material to be child sexually abusive material at the time of distribution or promotion, and (3) the defendant distributed or promoted the material with criminal intent.

---

[12] MCL 750.145c(2).

23

Also, we hold that the mere obtaining and possessing of child sexually abusive material using the Internet does not constitute a violation of MCL 750.145c(3).

There was insufficient evidence in this case for a jury to conclude beyond a reasonable doubt that defendant distributed or promoted child sexually abusive material with criminal intent.  Therefore, we affirm the Court of Appeals decision reversing defendant's conviction of distribution or promotion under MCL 750.145c(3).

Marilyn Kelly
Michael F. Cavanagh
Stephen J. Markman

24

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                  No. 125483

RUSSELL DOUGLAS TOMBS,

    Defendant-Appellee.

_____

TAYLOR, C.J. (*concurring*).

I concur in the result of Justice Kelly's opinion and with her analysis in all but part VI(B). I write separately to explain my own reasons for reaching the conclusion that defendant's conviction for "distributing or promoting" child sexually abusive material was properly reversed by the Court of Appeals. I agree with Justice Kelly regarding the intent required to establish a violation of this statute. In addition, I believe such an intent is required because without it, otherwise innocent conduct could be criminalized. As a general rule there can be no crime without a criminal intent.[1] *People v Roby*, 52

_____

[1] Strict liability crimes present a very limited exception to this rule, but I do not believe this crime is in that category.

Mich 577, 579; 18 NW 365 (1884) (Cooley, C.J.). The United States Supreme Court has spoken extensively on this, holding that when a criminal statute is totally silent about state of mind (as is often the case), courts nonetheless assume that Congress intended to require some kind of guilty knowledge with respect to certain elements of the crime. See *Liparota v United States*, 471 US 419, 426; 105 S Ct 2084; 85 L Ed 2d 434 (1985) (courts should not read criminal statutes as requiring no *mens rea*); *Morissette v United States*, 342 US 246, 255-256, 263; 72 S Ct 240; 96 L Ed 288 (1952).

Under Justice Corrigan's interpretation, the only element requiring criminal intent is that the material is child pornography, because this is the element that criminalizes otherwise innocent conduct. However, a person may be aware of the existence of such material without taking the criminal step of distributing it or promoting it. Such a person would be engaging only in innocent conduct until the element of distributing or promoting is met. What Justice Corrigan seems to be arguing here is that defendant possessed the material, and then went one step further and handed the computer to Comcast employees, and thus he had not engaged in only innocent conduct before distributing. However, possession is not an element of

distributing or promoting, and we must look at the elements of the charged crime, not the facts of the case before us, in determining the required intent. The Court of Appeals correctly applied this law in its analysis, finding that defendant did not "distribute" the material when he returned the computer to Comcast because he did not "intend[] for anyone to see or receive child sexually abusive material." 260 Mich App 201, 217; 679 NW2d 77 (2003).

Thus, I agree with Justice Kelly's conclusion that there was insufficient evidence to prove defendant had this intent when he returned the computer to Comcast. *Ante* at 20. I also agree with her analysis and conclusion that there was insufficient evidence supporting the prosecutor's second theory, i.e., that defendant promoted child sexually abusive material by merely acquiring or possessing it. Justice Kelly properly concludes that acquisition or possession of the material is not legally equivalent to promoting it for the purposes of MCL 750.145c(3). *Ante* at 22.

Finally, while I agree with her conclusion that defendant's conviction for distributing or promoting child sexually abusive material is not supported by the prosecutor's third theory—that defendant committed the

3

crime by uploading or sharing child sexually abusive material through the Internet—I do not find her analysis of this issue persuasive. Although the jury found defendant not guilty of using a computer or the Internet to distribute or promote child sexually abusive material, the elements of the more general distribution crime are also satisfied by defendant's alleged acts of sharing the material, and this is sufficient to convict. When a defendant is convicted under a multicount indictment, we must consider whether the elements of each charge have been met. *People v Vaughn*, 409 Mich 463, 465; 295 NW2d 354 (1980). Each count is regarded as if it were a separate indictment, and jury verdicts rendered on the several counts need not be consistent. *Id*.

In contrast to Justice Kelly's analysis, I believe the evidence supporting this theory is sufficient (but barely) when the evidence presented at trial, and the reasonable inferences taken from it, is viewed in the light most favorable to the prosecution.[2] See *People v Tanner*, 469 Mich 437, 444 n 6; 671 NW2d 728 (2003).

---

[2] At trial, Mr. David Joseph, the children's protective services worker, testified that defendant admitted "sharing" child pornography through the Internet. When pressed as to what defendant meant by "sharing," Mr. Joseph

(continued…)

4

However, the fact is that the prosecutor presented to the jury distinct factual situations, each of which could have been seen by individual jurors as satisfying the *actus reus* of the single charge.[3]  This is permissible, but only if the jurors are instructed that they all must unanimously agree that defendant committed at least one of the criminal acts.  That unanimity requirement, not having been presented to the jury, is fatal to this conviction.  The Michigan Constitution requires the jury's verdict to be unanimous to comply with minimal due process.  Const 1963, art 1, § 14; see *People v Cooks*, 446 Mich 503, 510-511; 521 NW2d 275 (1994); *Schad v Arizona*, 501 US 624, 649-652; 111 S Ct 2491; 115 L Ed 2d 555 (1991) (Scalia, J., concurring).  Unanimity is not a difficulty if there is a single charged criminal act that could have been committed in various ways.  In such a case, jurors need not agree on the mode of commission.  Thus, submitting a charge of murder in which the defendant either killed with premeditation or committed the murder during the course of a felony does not violate

---

(…continued)
first admitted he was not an expert, then stated that his "impression" was that defendant was part of a club.  He did not testify that defendant "stated" he was part of a club.

[3] That is, although defendant was charged only once, the alleged acts could have resulted in three separate charges.

due process because the jury still determines what crime was committed as a result of the single, unlawful act. Likewise, "when a statute lists alternative means of committing an offense, which means in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theories." *People v Gadomski*, 232 Mich App 24, 31; 592 NW2d 75 (1998). For example, in *Gadomski*, an instruction on unanimity was not necessary when the jury was required to find that the defendant engaged in a specific act of sexual penetration alleged by the prosecution and that this act was accompanied by one of three alternative aggravating circumstances: (1) that the act occurred during the commission of a home invasion, see MCL 750.520b(1)(c); (2) that it involved aiding and abetting and force or coercion, see MCL 750.520b(1)(d)(ii); or (3) that it caused personal injury to the victim and involved force or coercion, MCL 750.520b(1)(f). *Id*. at 29-31. But if discrete, specific acts were committed, each of which is claimed to satisfy all the elements of the charged crime, the trial court is required to instruct the jury that it must unanimously agree on the same specific act. *Cooks, supra* at 530.

Here, at least two of the alleged criminal acts required materially different evidence. The act of

returning the computer to Comcast involved a separate and different set of facts from those concerning defendant's alleged involvement in facilitating the exchange of Internet child pornography. To have a valid conviction, the jurors had to be instructed that they all had to agree on the incident in which all elements of the crime had been established. This was not done, and this deprived defendant of due process.[4] *Schad, supra* at 650. Complicating this, however, is the fact that the error was unpreserved because defendant did not request such an instruction and did not object to the instructions as given.

MCL 768.29 provides that "[t]he failure of the court to instruct on any point of law shall not be ground for

---

[4] The lead opinion in responding to this position misunderstands it. My position is that all the jurors must agree on the same incident that establishes the crime. You cannot, to use this case as the example, have some jurors using the facts of one incident (the return of the computer) and others using another incident (the alleged distribution of pornography over the Internet) to establish a crime of distribution. To prevent this, an instruction telling the jurors that they must agree on not only the bottom line but also on which incident establishes the crime was necessary. This was not done here and thus error requiring reversal occurred. My argument is not predicated on the consistency of the several verdicts themselves. Indeed, the verdicts could be consistent and the unanimity requirement still be violated. Nothing in the lead opinion responds to this simple point.

7

setting aside the verdict of the jury unless such an instruction is requested by the accused," but this statute can only control if enforcing it would not run afoul of the Constitution. In an effort to make such incompatibilities of statutes and the Constitution as infrequent as possible, a canon of construction has developed that constrains us to construe the statute at issue, if possible, in a manner that does not conflict with the Constitution. *People v Bricker*, 389 Mich 524, 528; 208 NW2d 172 (1973). *People v Carines*, 460 Mich 750, 763-765; 597 NW2d 130 (1999), has outlined our approach to these cases and holds that with unpreserved, constitutional error, such as we have here, the defendant, to secure a reversal, must show that three requirements are met: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763.

The error here meets all these elements. The jury could have convicted, and most likely did convict, defendant on the basis of his act of turning in the computer. Alternatively, it could have convicted on the theory the prosecutor presented that acquiring and possessing the material equates with "promotion." Finally, it could have convicted him on the basis of a single piece of testimony from which one may infer that defendant

8

distributed the material by uploading it and sending it to others through the Internet. While two of these three theories were impermissible as a matter of law (having no proof of criminal intent) and the third was permissible, as I have discussed, there is simply no showing, nor can there be, that the jurors all agreed on the same incident as the one in which all elements of the crime were shown. This is a violation of the unanimity requirement. Moreover, it is impossible to say that, had the jury been properly instructed, the outcome would be the same. This constitutes plain error that affected defendant's substantial rights and the conviction must be reversed.

For the reasons I have stated, I agree with Justice Kelly's result of affirming the Court of Appeals reversal of defendant's conviction for distributing or promoting child sexually abusive material and I agree with her analysis in all but part VI(B).

Clifford W. Taylor

9

**S T A T E   O F   M I C H I G A N**

**SUPREME COURT**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                                    No. 125483

RUSSELL DOUGLAS TOMBS,

    Defendant-Appellee.

_____

CORRIGAN, J. *(concurring in part and dissenting in part).*

I agree with the majority that the distribution or promotion of child sexually abusive material must be an intentional act. I respectfully dissent, however, from the majority's application of intentionality. Under the majority view, the intentionality of defendant's act is negated because he allegedly and erroneously believed that Comcast's computer technicians would not "discover or view" the child sexually abusive material. The majority's erroneous analysis adds a heightened intent element that is not constitutionally required and is not found in the plain language of the statute.

I believe that the prosecution presented sufficient evidence that defendant distributed child sexually abusive material. Defendant distributed child sexually abusive material when he deliberately returned the company-owned

computer to his employer, with full knowledge that the computer contained images that he knew to be child sexually abusive material. Accordingly, I would reverse the decision of the Court of Appeals and reinstate defendant's conviction of distributing child sexually abusive material, MCL 750.145c(3).

While the majority properly imputes an intent to the distribution or promotion element contained in the statute, it is undisputed that defendant intentionally distributed the computer to his employer with the knowledge that the computer contained child sexually abusive material. Testimony adduced at trial reveals that, on the day defendant resigned his employment with Comcast, defendant was informed that he would have to return the company automobile and computer the same day. His supervisor, Christopher Williams, testified that he waited "45 minutes to an hour" before proceeding to defendant's residence. While en route to defendant's residence, defendant telephoned Williams and told Williams that "everything was ready." The evidence revealed that, although given less time than requested, defendant voluntarily returned the computer to Comcast.

Moreover, the testimony of David Joseph revealed that defendant was aware that the prurient material was on the

2

computer at the time the computer was returned. Joseph testified that defendant was not concerned that the material would be discovered on the Comcast computer because defendant "didn't feel as though there would be anybody that would go through those individual files" because defendant believed that "the hard drive would sort of just be wiped out." Defendant further stated to Joseph that he "didn't get the opportunity" to "expunge the material that he knew was offensive."[1] The evidence adduced clearly establishes that defendant deliberately returned the computer to Comcast, knowing that it contained child sexually abusive material. Because the statute requires no more, this should end the inquiry.

The lead opinion casts the issue as whether defendant's distribution of child sexually abusive material must be an intentional act; however, the opinion ignores the uncontroverted evidence that the distribution *was in fact* an intentional act. Instead, the opinion concludes

---

[1] While defendant maintained to Joseph that he did not have the "opportunity" to "expunge" the child pornography, the testimony in the record indicates otherwise. The testimony of Sgt. Joseph Duke revealed that a "wiping program" was installed on the hard drive of defendant's computer. Duke further testified that it would have taken less than fifteen minutes to completely eradicate the child pornography files from the computer.

that defendant did not intentionally distribute the child sexually abusive material because "defendant neither intended nor expected anyone at Comcast to *discover* or *view* the material." *Ante* at 18.

The lead opinion requires a heightened *mens rea* element that is not supported in the language of the statute and that is not constitutionally required. The opinion cites *Morissette v United States*,[2] *Staples v United States*,[3] and *United States v X-Citement Video, Inc*,[4] in support of the claim that this additional element is required. However, those cases do not hold that a defendant's criminal intent is dependent on the particular response or reaction of a third party. In each case, the Supreme Court held that the prosecution was required to prove a defendant possessed criminal intent,[5] either with regard to the nature of the volitional act (*Morissette*) or with regard to the nature of the prohibited goods (*Staples*

---

[2] 342 US 246; 72 S Ct 240; 96 L Ed 288 (1952).

[3] 511 US 600; 114 S Ct 1793; 128 L Ed 2d 608 (1994).

[4] 513 US 64; 115 S Ct 464; 130 L Ed 2d 372 (1994).

[5] "Criminal intent" is defined as "[t]he intent to commit a crime . . . ." Black's Law Dictionary (5th ed). In this case, defendant intended to commit a crime, as defined by our Legislature:  he knowingly delivered a computer that he knew to contain child pornography. The only intent defendant lacked in this case was the intent *to get caught.*

and *X-Citement*). In *Morissette*, for example, the Court required the prosecution to prove that the defendant had the intent to steal shell casings. In this case, the prosecution must prove that defendant had the general intent to distribute child pornography. See *People v Nowack*, 462 Mich 392, 405; 614 NW2d 78 (2000) (requiring "'the intent to do the physical act'" for a general intent crime) (citation omitted). The lead opinion transforms defendant's admittedly volitional act into a nonvolitional act on the basis of what defendant expected his employer to do.

Under the lead opinion, it is not enough that defendant intentionally distribute the computer, nor is it enough that defendant be aware of the presence of child pornography on the computer at the time of distribution. Rather, the opinion requires proof that defendant specifically intended a particular action or response on the part of the recipient.[6]

---

[6] Those on the lead opinion believe that this specific intent is required, else "[a]ll the Comcast employees" who handled the computer files could be convicted of violating the statute, despite having "no criminal intent." *Ante* at 15. However, even under the standard articulated in the lead opinion, *all* the witnesses could still be convicted of violating the statute. Each one of the Comcast employees intentionally distributed the computer to his superior,
(continued…)

It is unclear why the lead opinion requires that a defendant specifically intend his or her recipient to "discover or view" the prurient material in order to "distribute" the material. The plain meaning of the word "distribute" does not support such a requirement. The dictionary definition of "distribute" is: "1. to divide and give out in shares; allot. 2. to spread throughout a space or over an area; scatter. 3. to pass out or deliver: *to distribute pamphlets*. 4. to sell (merchandise) in a specified area." *Random House Webster's College Dictionary* (2d ed, 1997). Likewise, Black's Law Dictionary (6th ed) defines "distribute" as "[t]o deal or divide out in proportion or in shares."  As the Court of Appeals

(…continued)
knowing that the computer contained child pornography, and intending for the recipient to "discover or view" the material.

Although not directly applicable here, the Legislature has already taken steps to prevent the prosecution of people deemed to have no criminal intent.  For example, MCL 752.367 contains several exemptions to MCL 750.145c(3). MCL 750.145c has been amended by 2002 PA 629 and 2004 PA 478. The most recent amendments of MCL 750.145c provide both civil and criminal immunity from a charge of possession to computer technicians acting within the scope of their employment. MCL 750.145c(4)(a) and (9). The Legislature has also taken steps to provide criminal immunity to police officers acting within the scope of their employment. MCL 750.145c(4)(b).  It is within the purview of the Legislature, not the judiciary, to extend this immunity to the distribution of child pornography.

correctly stated, the most applicable definition of "distribute" is to "pass out or deliver." Nothing in either the lay dictionary or the legal dictionary gives any indication that "distribution" requires the recipient to view or appreciate the prurient nature of the material intentionally distributed.

Moreover, the lead opinion makes no effort to rationalize why defendant's erroneous belief that no one at Comcast would "discover or view" the child pornography converts defendant's volitional act into a nonvolitional act. Likewise, the opinion fails to explain why defendant's criminal intent to distribute turns on how he believed Comcast would respond after the intentionally distributed material was received. While the lead opinion relies heavily on the claim that "the practice" at Comcast was to reformat the hard drive of the computer without reviewing any of the files, the testimony of Christopher Williams indicated that this practice was only done "on some of" the company computers. Williams testified that he inspected the contents of the computer "to see what it needed" before being "issued to another technician." Cliff Radcliff testified that the process of completely erasing the contents of the hard drive was "lengthy," and that "just cleaning out the unneeded files" shortened the

7

cleaning process. The record does not reveal any company "policy" requiring the automatic erasure of computer hard drives without inspection. Indeed, even if such a "policy" did exist, the lead opinion fails to explain why defendant enjoyed any type of expectation interest in the continuation of this so-called "practice."[7] That defendant believed that the material would not *be discovered* in the computer does not alter the fact that he knew that his employer would in fact *receive* the material. Thus, the prosecutor presented sufficient evidence for a conviction under MCL 750.145c(3).

Apart from the sufficiency of the evidence, Chief Justice Taylor raises in his concurrence for the first time in these proceedings the requirement of unanimity in a conviction. Under this constitutional requirement, individual jurors must rely on the same *actus reus*, despite the presence of alternative acts, when they convict a defendant. See *People v Cooks*, 446 Mich 503, 510-511; 521

---

[7] The lead opinion also notes that defendant had "no expectation" that defendant's employer would "search for and find" the child pornography. Yet this ignores the uncontroverted evidence that defendant knowingly delivered the company computer to computer technicians, who would have no difficulty locating the images "in subfolders seven directory levels down." Indeed, one officer located the materials without difficulty, despite his inexperience with computer investigations.

NW2d 275 (1994).  Here, the Chief Justice's concern is that the jury heard evidence regarding two different "acts" that *might* have met the statute and *might* have resulted in defendant's conviction:  (1) defendant's return of the computer to his employer and (2) defendant's participation in an Internet club that traded in child sexually abusive material.

While it may be possible that the jury could have failed to reach unanimity here, the issue has not been raised by defendant and is not before our Court. Additionally, as Chief Justice Taylor notes, this issue is unpreserved.  Defendant neither requested a unanimity instruction nor objected to the instructions given.

An unpreserved constitutional error comes within the standard of review articulated in *People v Carines*, 460 Mich 750, 763-765; 597 NW2d 130 (1999).  As the Chief Justice noted when he listed the requirements for showing that a plain error occurred that affected a substantial right, the *defendant* bears the evidentiary burden. *Id*. at 763 (recognizing that the burden of persuasion for a showing of prejudice was on the defendant).  However, defendant has not established entitlement to relief under *Carines* because, at a minimum, defendant did not identify or argue the issue.  Moreover, prejudice requires showing

9

that the error affected the outcome. This differs from showing the *possibility* that the jury improperly failed to meet the unanimity requirement and requires a showing that the error *did* affect the outcome.

Here, the jury was instructed to consider only acts occurring on August 9, 2000, the day that defendant relinquished his employment. The social worker's testimony did not link defendant's admission that he participated in an Internet club to any particular date. Also, the jury was instructed to consider only the evidence presented, and that the arguments made by the attorneys were not evidence. Thus, I believe that the Chief Justice has established, at best, the *possibility* of error; however, it has not been shown that claimed error affected the outcome of the case. More fundamentally, defendant must make this showing rather than rely on the Chief Justice to make it on an issue not preserved below and not argued before this Court.

In conclusion, the prosecutor presented sufficient evidence to convict defendant of distribution of child sexually abusive material under MCL 750.145c(3). While I agree that an intent requirement is properly imputed to the "distributes or promotes" element of the statute, the prosecution put forward sufficient evidence to sustain defendant's conviction. Defendant intentionally delivered

10

the computer to his employer, knowing that the computer contained child sexually abusive material at the time of its return. The majority errs in imputing a heightened requirement that defendant intend his recipient to "discover or view" the material. Because this requirement is neither constitutionally nor statutorily required, I dissent from its adoption. I would reverse the decision of the Court of Appeals and reinstate defendant's conviction.

Maura D. Corrigan
Elizabeth A. Weaver
Robert P. Young, Jr.
