PEOPLE v TOMBS

Docket No. 236858. Submitted June 4, 2003, at Detroit. Decided December
    30, 2003, at 9:00 A.M. Leave to appeal granted, 470 Mich ___.

    Russell D. Tombs was convicted by a jury in the Macomb Circuit
    Court, Mary A. Chrzanowski, J., of distributing or promoting child
    sexually abusive material, possession of child sexually abusive
    material, and using the Internet or a computer to communicate
    with any person to commit conduct proscribed by MCL
    750.145c(4). The defendant appealed.

    The Court of Appeals *held*:

    The defendant's conduct did not violate the statute prohibiting
distributing or promoting child sexually abusive material, MCL
750.145c(3). His conviction of that offense and the corresponding
sentence must be reversed. The remaining convictions and
sentences must be affirmed.

    1. The term "distributes" in subsection 145c(3) is ambiguous. The
purpose of subsection 145c(3) is to prohibit the dissemination of
child sexually abusive material. That purpose would not be fur-
thered by a construction of the statute that would prohibit all
transfers of such material, regardless of the actor's intent, including
transfers to proper authorities or to dispose of the material. The
Legislature's intent is furthered by a construction of "distributes"
that requires the actor to have an intent to disseminate child sexu-
ally abusive material to others. Here, the prosecution failed to pres-
ent evidence that the defendant intended for anyone to see or
receive child sexually abusive material when he returned a com-
puter containing such material to his employer with the belief that
the hard drive of the computer would be "cleaned" of its prior con-
tents before the computer would be issued to another employee.
There was insufficient evidence that the defendant distributed child
sexually abusive material in violation of subsection 145c(3).

    2. The phrase "communicate with" in MCL 750.145d(1), which
prohibits using the Internet or a computer to communicate with
any person to possess child sexually abusive material, is not uncon-
stitutionally vague when the statute is examined in light of the
defendant's admitted possession of child sexually abusive material
that he acquired by downloading the material onto his computer.

Affirmed in part and reversed in part.

CRIMINAL LAW — DISTRIBUTING CHILD SEXUALLY ABUSIVE MATERIAL — INTENT TO
    DISSEMINATE.

    A conviction of distributing or promoting child sexually abusive mate-
    rial requires evidence of the actor's intent to disseminate child sex-
    ually abusive material to others (MCL 750.145c[3]).

*Michael A. Cox*, Attorney General, *Thomas L.
Casey*, Solicitor General, *Carl J. Marlinga*, Pros-
ecuting Attorney, *Robert John Berlin*, Chief Appellate
Lawyer, and *Beth Naftaly Kirshner*, Assistant Pros-
ecuting Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek*)
for the defendant on appeal.

Before: CAVANAGH, P.J., and GAGE and ZAHRA, JJ.

ZAHRA, J. A jury convicted defendant of distributing
or promoting child sexually abusive material, MCL
750.145c(3); possession of child sexually abusive
material, MCL 750.145c(4); and using the Internet or a
computer to communicate with any person to commit
conduct proscribed under MCL 750.145c(4) (posses-
sion of child sexually abusive material), MCL
750.145d. The trial court sentenced[1] defendant to con-
current prison terms of seventeen to eighty-four
months' imprisonment for his conviction of distribut-
ing or promoting child sexually abusive material, six-
teen to twenty-four months' imprisonment for his
conviction of using the Internet or a computer to pos-
sess child sexually abusive material, and 365 days in
jail for his conviction of possession of child sexually
abusive material. Defendant appeals as of right. The

_____

    [1] This Court previously remanded this case for resentencing. *People v
Tombs*, unpublished order of the Court of Appeals, entered July 16, 2002
(Docket No. 236858).

most significant issue presented on appeal is whether defendant may be found to have distributed child sexually abusive material in violation of MCL 750.145c(3) on the basis that he returned to his employer a laptop computer that contained within it child sexually abusive material. We hold that this conduct did not violate MCL 750.145c(3). We therefore reverse defendant's conviction and sentence for distributing or promoting child sexually abusive material. We affirm defendant's remaining convictions and sentences.

### I. BASIC FACTS AND PROCEEDINGS

Defendant was a field technician for Comcast OnLine (Comcast), a branch of the Comcast cable company that provides cable Internet access. Comcast provided defendant with a laptop computer for employment-related use. Before the computer was issued to defendant, the hard drive was "cleaned" of its prior contents.

On August 9, 2000, defendant unilaterally terminated his employment with Comcast. Defendant called Christopher Williams, an employee of Comcast, and stated that he would return Comcast's equipment and work van the ensuing weekend. However, Williams advised defendant that the equipment would be collected that day. Defendant informed Williams that the work van would be parked in front of defendant's house, and that the keys and the Comcast equipment would be inside the van. Williams picked up the van and the equipment, including the laptop computer.

Williams returned to Comcast's office and began assessing whether the computer needed to be reformatted before being issued to another technician. Williams found files on the computer that con-

tained pictures of a partially naked young girl. Williams gave the computer to Carl Radcliff, a data support technician for Comcast. Radcliff testified that he eventually found "a series of child pornography" when he was searching picture files known as "JPG" files on the computer. Radcliff indicated that the pornographic material on the computer was not in a readily available location because it was "buried inside of what's known as a user profile." Radcliff then took the computer to Stephen Hill, a Comcast system engineer, informed Hill what he had found on the computer, and recommended turning the matter over to the authorities. Hill forwarded the computer to Danielle Kolomyjec, who worked in the personnel department of Comcast. Kolomyjec turned the computer over to Ronald Hanoka, Comcast's security director for the Midwest division. Hanoka immediately took the computer to Detective Edward Stack of the St. Clair Shores Police Department.

Detective Stack testified that he and another detective accessed JPG files in the computer and, in short, found images of child pornography. Sergeant Joseph Duke, the supervisor of the Computer Crimes Unit of the Oakland County Sheriff's Department, found over five hundred images that he believed qualified "as either child sexually abusive material or child erotica" on the computer. Sergeant Duke believed that the photographs originated from the Internet. Sergeant Duke also indicated that although the hard drive of the computer could have been reformatted so that its files would not be accessible, the files were difficult to find and he "had to go down 7 directory levels from the root to get to the images that were shown to the jury."

Defendant was arrested and a search of defendant's home revealed additional child sexually abusive material. In sum, Sergeant Duke's investigation discovered over 6,500 photographs that qualified as child sexually abusive material or "child erotica," and books and computer text files that described "fantasy stories about the molestation of children." At the time of defendant's arrest, defendant denied knowledge of child pornography on the computer.

David Joseph, a children's protective services worker with the Family Independence Agency, interviewed defendant because there was evidence of defendant's involvement with child pornography and there were two minor children in defendant's home. Joseph indicated that defendant initially denied responsibility for the child pornography found on the computer. Joseph testified that defendant eventually stated that defendant's wife had been "emotionally unavailable" to defendant and that "he turned to the Internet and began exploring pornography which initially started out as adult material." Joseph indicated that defendant told him that

> at some point he encountered child pornography; and I remember specifically he likened it to something of a train wreck or a car accident where he couldn't really account for why it is that he found this materials [sic] attractive, but had developed sort of an appetite for these things and began accumulate [sic] photographs on the Internet, downloading and sharing pornography involving children.

Joseph also testified in regard to other statements that defendant made to him about child pornography:

> If I recall he had several computers in the house; and he said he had basically amassed quite a collection over a period of four years; and that he was growing more con-

cerned about whether or not his children or his wife would stumble upon these computers—these images on the computer; and he had begun basically a systematic sort of disassembly of the computers so that they wouldn't be accessible to other family members, and that he would store the materials for his own use on the laptop, the Comcast computer. And I inquired of him at that point, was he concerned about somebody else finding the Comcast computers, and he indicated that typically when a Comcast employee leaves the employment, the laptop is basically reinstalled with new programs, and that he didn't feel as though there would be anybody that would go through those individual files—that his belief was that the Comcast computer would just sort of be—and I'm not a computer expert, but that the hard drive would sort of just be wiped out. The necessary Comcast programs would be reinstalled, and that no one would discover his images of the pornography on the computer.

Joseph indicated that defendant said he found child pornography sexually gratifying. Defendant replied, "[c]orrect" when asked if "he had gotten these [child pornography] images from the Internet and from sharing with others." Joseph also said that it was his impression from talking with defendant that "he was a part of a club, if you will, of people that found images of children sexually gratifying and would exchange and get and give material." When asked if this was "a computer Internet club type thing," Joseph replied, "[c]orrect."

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to establish that he distributed child sexually abusive material in violation of MCL 750.145c(3). Due process requires that a prosecutor introduce evidence

sufficient to justify a trier of fact to conclude that the defendant is guilty beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999). " '[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.' " *People v Hunter*, 466 Mich 1, 6; 643 NW2d 218 (2002), quoting *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992). Underlying issues of statutory interpretation are reviewed de novo. *People v Morey*, 461 Mich 325, 329; 603 NW2d 250 (1999).

Defendant was convicted of distributing child sexually abusive material in violation of MCL 750.145c(3), which provided[2] in relevant part:

> A person who distributes or promotes, or finances the distribution or promotion of, or receives for the purpose of distributing or promoting, or conspires, attempts, or prepares to distribute, receive, finance, or promote any child sexually abusive material or child sexually abusive activity is guilty of a felony, punishable by imprisonment for not more than 7 years, or a fine of not more than $50,000.00, or both, if that person knows, has reason to know, or should reasonably be expected to know that the child is a child . . . .

At trial, the prosecution argued that defendant distributed child sexually abusive material by returning to Comcast the computer that contained such material. The prosecutor also argues on appeal that defen-

---

[2] MCL 750.145c(3) was amended after the conclusion of the lower court proceedings in this case. 2002 PA 629. The relevant language of the statute is unchanged.

dant promoted and distributed child sexually abusive material to others over the Internet. While there is evidence supporting this theory of distribution through the Internet, the jury specifically found defendant not guilty of using a computer to promote or distribute child sexually abusive material. Moreover, the jury verdict indicated that defendant used the Internet or a computer only to possess child sexually abusive material. Given the prosecutor's theory that defendant distributed child sexually abusive material by returning to Comcast the computer containing such material and the jury's verdict of acquittal on the charge of using a computer to distribute or promote such material, we conclude that defendant's conviction solely rests upon the theory primarily advanced by the prosecution at trial: that defendant distributed child sexually abusive material by returning to Comcast a computer that contained such material. Accordingly, our review of the sufficiency of the evidence is limited to the theory that resulted in defendant's conviction.

On appeal, defendant argues that the prosecutor's case relies on a construction of the statute that is inconsistent with the common and accepted meaning of the word "distributes." Defendant maintains that, given the common and accepted meaning of the word "distributes," he did not distribute child sexually abusive material because he did not intend for anyone to see the material on the computer.

To ascertain the meaning of the word "distributes" in MCL 750.145c(3), we apply the following rules of statutory interpretation.

The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature. *In re*

*MCI Telecom Complaint*, 460 Mich 396, 411; 596 NW2d 164 (1999); *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). Initially, we review the language of the statute itself. *House Speaker v State Admin Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). If the statute is unambiguous on its face, the Legislature is presumed to have intended the meaning plainly expressed and further judicial interpretation is not permitted. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992).

"Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent." *Sun Valley Foods Co v Ward*, 460 Mich 230, 236;596 NW2d 119 (1999). An ambiguity of statutory language does not exist merely because a reviewing court questions whether the Legislature intended the consequences of the language under review. An ambiguity can be found only where the language of a statute as used in its particular context has more than one common and accepted meaning. Thus, where common words used in their ordinary fashion lead to one reasonable interpretation, a statute cannot be found ambiguous. [*Colucci v McMillin*, 256 Mich App 88, 94; 662 NW2d 87 (2003).]

The word "distributes" is not defined in the statute, nor is there any published cases interpreting the meaning of "distributes" in MCL 750.145c(3). "Where the Legislature has not expressly defined the common terms used in a statute, this Court may turn to dictionary definitions 'to aid our goal of construing those terms in accordance with their ordinary and generally accepted meanings.' " *In re Certified Question from United States Court of Appeals for Sixth Circuit*, 468 Mich 109, 113; 659 NW2d 597 (2003), quoting *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999). "Distribute" has several definitions, including: "1. to divide and give out in shares; allot. 2. to spread throughout a space or over an area; scatter. 3. to pass out or deliver: *to distribute pamphlets.* 4. to sell (merchan-

dise) in a specified area." (emphasis in original). *Random House Webster's College Dictionary* (2d ed) (1997). As applied here, one definition of "distributes," i.e., delivers, describes defendant's conduct. However, the remaining definitions are not applicable to defendant's conduct. Thus, because the word "distributes" comprises several definitions that each describes different conduct, we conclude that a single common meaning of the word "distributes" cannot be ascertained.

The ambiguity of the word "distributes" was further shown during the jury's deliberations in this case. The record reflects that the jury expressed confusion in applying the word "distributes" without regard to a mens rea requirement corresponding to the act of distribution.[3] The jury requested clarification on the definition and meaning of the word "distributes." The trial court declined to define the word "distributes" for the jury, and, instead, left it to the jurors to define and give meaning to the word.

The prosecution's construction of the statute interprets the word "distributes" broadly. Applied here, the prosecution claims that the act of delivering the computer with the objectionable material contained within it constitutes distribution of child sexually abusive material in contravention of MCL 750.145c(3). The prosecution advocates a construction of the statute that does not require that defendant possessed a mens rea for the act of distribution. Defendant argues that the word "distributes" should be construed to imply a mens rea requirement that narrows the scope

---

[3] The jury specifically asked the trial court whether intent is a factor in applying the word "distributes."

of the word "distributes." Specifically, he argues that
each of the definitions of the word "distributes"
implies an intent to disseminate with a purpose.
Defendant argues that his interpretation of "distrib-
utes" is supported by the statute, which contains
terms and phrases indicative of commercial or pur-
poseful distribution: "finances the distribution or pro-
motion," or "receives for the purpose of distributing
or promoting," or "conspires," "attempts," or "pre-
pares to distribute, receive, finance, or promote."

We conclude that the word "distributes" is ambigu-
ous as used in this statute. Reasonable minds can dif-
fer concerning the meaning of this statute, and there-
fore judicial construction of the statute is appropri-
ate. *Colucci, supra* at 94. The prosecution's con-
struction of the word "distributes" is exceedingly
broad, only requiring as evidence to support a convic-
tion that an actor in possession of child sexually abu-
sive material transfers possession of such material to
another person. On the other hand, defendant's con-
struction, while rational, relies on implication of a
mens rea requirement that is not expressly stated in
the statute.

When faced with an ambiguity in a statute, "we
should give effect to the interpretation that more
faithfully advances the legislative purpose behind the
statute." *People v Adair*, 452 Mich 473, 479-480; 550
NW2d 505 (1996). In doing so, we consider "the
object of the statute in light of the harm it is designed
to remedy, and strive to apply a reasonable construc-
tion that will best accomplish the Legislature's pur-
pose." *Marquis v Hartford Accident & Indemnity
(After Remand)*, 444 Mich 638, 644; 513 NW2d 799

(1994), and *People v Rehkopf*, 422 Mich 198, 207; 370 NW2d 296 (1985).

The purpose of this statute is to prohibit the dissemination of child sexually abusive material in the state of Michigan. Without reference to an actor's intent in regard to the act of distribution, the statute prohibits all transfers of such material, including transfers to proper authorities or the disposal of the material. Clearly, the Legislature did not intend to prohibit these transfers of child sexually abusive material. In addition, construing the word "distributes" in a way that would prohibit transfers of child sexually abusive material to proper authorities is not related to any plausible harm that the statute is designed to prevent. Therefore, we seek a narrowing construction of the word "distributes" to best accomplish the purpose of the statute.

In *United States v X-Citement Video, Inc*, 513 US 64; 115 S Ct 464; 130 L Ed 2d 372 (1994), the United States Supreme Court interpreted a statute similar to MCL 750.145c(3).[4] In *X-Citement Video, Inc*, the

---

[4] In *X-Citement Video, Inc*, the Court addressed a similar statute that at that time stated:

"(a) Any person who—
"(1) knowingly transports or ships in interstate or foreign commerce by any means including by computer or mails, any visual depiction, if—

"(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
"(B) such visual depiction is of such conduct;

"(2) knowingly receives, or distributes, any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce or through the mails, if—

owner and operator of X-Citement Video, Inc (Rubin Gottesman), sold an undercover police officer forty-nine pornographic videotapes featuring an underage participant. Evidence at trial suggested that Gottesman was fully aware of the underage participant. He was convicted for knowingly transporting or distributing a visual depiction that involved the use of a minor engaging in sexually explicit conduct in violation of 18 USC 2252. On appeal, Gottesman argued that 18 USC 2252 was unconstitutional on its face because it lacked a necessary scienter requirement. Apparently, without a scienter requirement, a defendant could be convicted of knowingly transporting or distributing a visual depiction involving the use of a minor engaging in sexually explicit conduct without knowing that the depiction was of a minor. For instance, the Court noted that a Federal Express courier may knowingly transport a package containing such a depiction and violate the statute, even though the courier did not know the contents of the film. *X-Citement Video, Inc, supra* at 66-70.

Initially, the Court found that 18 USC 2252 was akin to the "common-law offenses against the 'state, the person, property, or public morals,' " *X-Citement Video, Inc, supra*, at 71, quoting *Morissette v United States*, 342 US 246, 255; 72 S Ct 240; 96 L Ed 288 (1952), "that presume a scienter requirement in the

---

"(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

"(B) such visual depiction is of such conduct;

\*     \*     \*

"shall be punished . . . ." [*X-Citement Video, Inc, supra* at 68, quoting 18 USC 2252 (1988 ed and Supp V).]

absence of express contrary intent." *X-Citement Video, Inc, supra* at 71-72. The Court then addressed the issue as whether the scienter requirement "knowingly," which expressly modified the acts of transporting or distributing, also modified the element that required that the prohibited material depict a minor engaging in sexually explicit conduct. *Id.* at 68. The Court held that due process required that the word "knowingly" modify this phrase, in part because of "the respective presumptions that some form of scienter is to be implied in a criminal statute even if not expressed, and that a statute is to be construed where fairly possible so as to avoid substantial constitutional questions." *Id.* at 69. Moreover, the Court indicated its concern that without such an interpretation, the statute " 'criminalize[s] a broad range of apparently innocent conduct.' " *Id.* at 71, quoting *Liparota v United States*, 471 US 419, 426; 105 S Ct 2084; 85 L Ed 2d 434 (1985).

The analysis employed by the United States Supreme Court in *X-Citement Video, Inc,* is instructive here. MCL 750.145c(3), which is similar to 18 USC 2252, is likewise akin to the "common-law offenses against the 'state, the person, property, or public morals,' " *X-Citement Video, Inc, supra,* at 71, quoting *Morissette, supra,* at 255.[5] Consequently, a mens rea requirement may be presumed in the absence of an express contrary intent. *X-Citement*

---

[5] Similarly, MCL 750.145c(3) is not a public welfare offense. "Persons do not harbor settled expectations that the contents of magazines and film are generally subject to stringent public regulation. In fact, First Amendment constraints presuppose the opposite view." *X-Citement Video, Inc, supra* at 71.

*Video, Inc, supra* at 71-72.[6] Further, MCL 750.145c(3) presents concerns that it " 'criminalize[s] a broad range of apparently innocent conduct.' " *X-Citement Video, Inc, supra* at 71, quoting *Liparota, supra* at 426. Here, several of the prosecution's witnesses, including Williams, Radcliff, Hill, Kolomyjec, and perhaps, Hanoka, "distributed" child sexually abusive material by handing over the computer to another person.[7] Indeed, the conduct of the prosecution's witnesses may more fairly be characterized as distribu-

---

[6] MCL 750.145c(3) has been amended three times over several years. However, the 1988 amendment may explain why the act of distribution contains no express mens rea requirement. MCL 750.145c(3), as added by 1977 PA 301, effective March 30, 1978, stated:

A person who commercially distributed or promotes, or finances the distribution or promotion of, or receives for the purpose of commercially distributing or promoting, or conspires, attempts, or prepares to so distribute, receive, finance, or promote any child abusive commercial material or child abusive commercial activity is guilty of a felony . . . .

Child abusive commercial material or child abusive commercial activity was defined solely in relation to a "commercial purpose." MCL 750.145c(3) (1978). "Commercial purpose" was defined in 1977 PA 301 to mean "any purpose for which monetary gain or other remuneration could reasonably be expected or anticipated, or has already been received or arranged for." MCL 750.145c(1)(b).

In 1988, the Legislature substantially amended the statute and eliminated all references to "commercial purpose." 1988 PA 110. This amendment of MCL 750.145c(3) thus reflects an intent to eliminate the requirement of a "monetary gain or other remuneration . . . ." However, the elimination of the "commercial purpose" requirement does not mean that the Legislature also intended to eliminate all mens rea in regard to the act of distribution.

[7] We recognize that, "outside the context of the First Amendment, 'one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional.' " *People v Lynch*, 410 Mich 343, 352; 301 NW2d 796 (1981), quoting *United States v Raines*, 362 US 17, 21; 80 S Ct 519; 4 L Ed 2d 524 (1960). Here, however, we are merely relying on evidence contained in the lower court to resolve a statutory ambiguity.

tion of offensive material than defendant's conduct; the prosecution's witnesses distributed the computer with instructions on how to make child sexually abusive material accessible, while the material that defendant distributed was not accessible to the average person. Thus, the absence of a mens rea requirement permits the statute to be construed in a manner that " 'criminalize[s] a broad range of apparently innocent conduct.' " *X-Citement Video, Inc, supra* at 71, quoting *Liparota, supra* at 426.

Consistent with *X-Citement Video, Inc,* we conclude that MCL 750.145c(3) requires an intent to disseminate child sexually abusive material to others.[8] We first note that a mens rea requirement is easily implied in this statute because it contains terms and phrases indicative of purposeful conduct. Also, this requirement of intent serves to separate those who understand the wrongful nature of their act from those who do not, *United States v Feola,* 420 US 671, 685; 95 S Ct 1255; 43 L Ed 2d 541 (1975), which resolves the ambiguity in the statute so as to avoid substantial constitutional questions.

Therefore, we resolve the ambiguity of the word "distributes" by giving effect to the Legislature's intention to prevent the dissemination of child sexually related material by requiring an intent to disseminate child sexually abusive material to others. Our construction of the word "distributes," on one hand,

---

[8] We are cognizant of our Supreme Court's numerous admonitions to avoid reading into a statute matters not clearly supported by the language of the statute. We do so here because (1) we conclude the statute is ambiguous, and (2) where we can fairly do so, we are bound to interpret the statute so as to avoid substantial constitutional questions. Reading the word "distributes" to require a mens rea eliminates all constitutional doubts. See *X-Citement Video supra, Inc, supra* at 78.

addresses the dissemination of child sexually abusive material regardless of the size of such dissemination, while, on the other hand, resolves the uncertainty of guilt through the incorporation of a mens rea requirement in cases where an actor's conduct is inconsistent with an intent to disseminate.

Applying our construction of MCL 750.145c(3) to this case, we conclude that the prosecution failed to present evidence that defendant intended for anyone to see or receive child sexually abusive material when returning the computer to his employer. Therefore, insufficient evidence was presented that defendant distributed child sexually abusive material in violation of MCL 750.145c(3). We reverse defendant's conviction and sentence for distributing or promoting child sexually abusive material in violation of MCL 750.145c(3).

## B. VAGUENESS

Defendant next argues that his conviction of using the Internet or a computer to communicate with any person to possess child sexually abusive material is invalid because the phrase "communicate with" found in MCL 750.145d(1) is unconstitutionally vague.[9] "This Court reviews de novo a challenge to the constitutionality of a statute under the void-for-vagueness

---

[9] Defendant also argues that his conviction of distributing or promoting child sexually abusive material is invalid because the words "distributes" and "promotes" found in MCL 750.145c(3) render the statute unconstitutionally vague. However, in light of our interpretation of MCL 750.145c(3), earlier in this opinion, this issue need not be addressed. We nonetheless note that a similar statute was interpreted and found constitutional by the United States Supreme Court. *New York v Ferber*, 458 US 747; 102 S Ct 3348; 73 L Ed 2d 1113 (1982).

doctrine." *People v Beam*, 244 Mich App 103, 105; 624 NW2d 764 (2000).

A statute may be challenged for vagueness on three grounds: (1) It does not provide fair notice of the conduct proscribed; (2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed; (3) its coverage is overbroad and impinges on First Amendment freedoms. *People v Howell*, 396 Mich 16, 20; 238 NW2d 148 (1976), citing *Grayned v Rockford*, 408 US 104, 108-109; 92 S Ct 2294; 33 L Ed 2d 222 (1972). "[V]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *Howell*, *supra* at 21, citing *United States v Nat'l Dairy Products Corp*, 372 US 29; 83 S Ct 594; 9 L Ed 2d 561 (1963).

> Due regard for principles of standing, and recognition that declaring a statute unconstitutional is " 'the gravest and most delicate duty that this Court is called on to perform,' " mandate that, outside the context of the First Amendment, "one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." [*People v Lynch*, 410 Mich 343, 352; 301 NW2d 796 (1981), quoting *United States v Raines*, 362 US 17, 20; 80 S Ct 519; 4 L Ed 2d 524 (1960), quoting *Blodgett v Holden*, 275 US 142, 148; 48 S Ct 105; 72 L Ed 206 (1927), and quoting *Raines*, *supra* at 21.]

Because defendant does not claim that the conduct of which he is accused is constitutionally protected by the First Amendment, we examine defendant's vagueness challenges in light of the facts of this case.

MCL 750.145d provides, in relevant part:

A person shall not use the internet or a computer, computer program, computer network, or computer system to communicate with any person for the purpose of doing any of the following:

(a) Committing, attempting to commit, conspiring to commit, or soliciting another person to commit conduct proscribed under . . . [MCL 750.145c] . . . . [MCL 750.145d(1).][10]

MCL 750.145c(4) provided at the time relevant to this action:

A person who knowingly possesses any child sexually abusive material is guilty of a misdemeanor . . . .[11]

When this statute is examined in light of defendant's admitted possession of child sexually abusive material, which he acquired by downloading it onto the computer, we conclude that this statute is not unconstitutionally vague. The common meaning of the phrase, "communicate with," adequately encompasses defendant's actions in receiving child sexually abusive material through the use of a computer. Defendant's receipt of child sexually abusive material through the computer indicates that he communicated his desire to receive such material through the computer. Moreover, the phrase, "communicates with," does not confer unlimited discretion to the trier of fact to determine whether the statute has been violated. The phrase, "communicate with" is

---

[10] MCL 750.145d was amended after the conclusion of the lower court proceedings in this case. 2000 PA 185. The amendments are not relevant to this case.

[11] MCL 750.145c(4) was amended after the conclusion of the lower court proceedings in this case. 2002 PA 629. The amendments are not relevant to this case. We do note that a violation of former MCL 750.145c(4) was punishable as a misdemeanor, but that a violation of the current MCL 750.145c(4) is punishable as a felony.

fairly ascertainable by persons of ordinary intelligence and may be readily applied in the context of using a computer. Moreover, the statute's mens rea requirement limits the trier of fact's discretion in determining whether the statute has been violated. See *New York v Ferber*, 458 US 747, 765, 766; 102 S Ct 3348; 73 L Ed 2d 1113 (1982); *People v Perez-DeLeon*, 224 Mich App 43, 49-51; 568 NW2d 324 (1997). Therefore, MCL 750.145d is not unconstitutionally vague as applied to defendant.

### C. OTHER ISSUES

Defendant next argues that his convictions of distributing child sexually abusive material and possessing child sexually abusive material violated his double jeopardy rights. In light of our prior conclusion in regard to defendant's conviction of distributing child sexually abusive material, this issue need not be addressed. *People v Bearss*, 463 Mich 623, 631; 632-633; 625 NW2d 10 (2001). Defendant last argues that the trial court improperly assessed defendant ten points under Offense Variable 9, in establishing his sentencing guideline range. However, defendant has already served his minimum sentence. Therefore, because this Court is unable to provide a remedy for the alleged error, the issue is moot and need not be addressed. *People v Rutherford*, 208 Mich App 198, 204; 526 NW2d 620 (1994).

### III. CONCLUSION

We construe MCL 750.145c(3) to require evidence of an intent to disseminate child sexually abusive material to others. The prosecution failed to present

sufficient evidence that defendant intended to disseminate child sexually abusive material to others. We reverse defendant's conviction and sentence for a violation of MCL 750.145c(3). We affirm defendant's remaining convictions and sentences.