*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

PATRICIA PARKINSON,

Defendant-Appellant.

FOR PUBLICATION
October 12, 2023
9:10 a.m.

No. 362683
Saginaw Circuit Court
LC No. 21-048675-FH

Before: HOOD, P.J., and REDFORD and MALDONADO, JJ.

HOOD, P.J.

Defendant, Patricia Parkinson, was convicted of animal cruelty involving 25 animals or more, under MCL 750.50(2)(a) and (4)(e), following a bench trial. The conviction stems from Parkinson's failure to provide adequate care to 26 chihuahuas that she owned or possessed in her single-wide trailer home. The trial court sentenced Parkinson to 60 months' probation with costs and restitution. She now appeals by right the trial court's findings and judgment, arguing that there was insufficient evidence that she owned 25 or more dogs and that she failed to provide adequate care to the dogs. We affirm.

## I. BACKGROUND

This case arises from Parkinson's possession of 26 chihuahuas in overcrowded and unsanitary conditions. In August 2020, Saginaw County Animal Care and Control (Saginaw Animal Control), assisted by Michigan State Police (MSP), executed a search warrant at Parkinson's residence, a single-wide trailer home on Apollo Drive, in Buena Vista Township, Saginaw County, Michigan, and seized 26 chihuahuas. At the time of the search, Parkinson was present at her home with her ex-husband, Donald Schollaert, and their daughter, Kimberly Schollaert. Parkinson later testified that she moved to the trailer in June 2020 and was living there with her daughter and ex-husband. The prosecution charged Parkinson with one count of animal cruelty involving 25 or more animals, MCL 750.50(4)(e). Specifically, in the information the prosecution alleged that Parkinson "fail[ed] to provide 25 or more animals with adequate care [MCL 750.50(2)(a)] and/or negligently allow[ed] 25 or more animals to suffer unnecessary neglect, torture, or pain [750.50(2)(f)] . . . ."

Parkinson was convicted following a one-day bench trial in April 2022. At trial, the prosecution called three witnesses: Abbe Balderstone, an animal control officer, Logan Smith, a kennel manager, and

Dr. Joseph Kline, D.V.M., a veterinarian, all employed with Saginaw Animal Control. Parkinson testified as the only defense witness.

Balderstone and Smith testified about the execution of the search warrant and the overcrowded and unsanitary condition of Parkinson's trailer. According to Balderstone, she saw "multiple dogs and deplorable conditions" upon entering the trailer, including clutter, garbage, feces, urine, and deteriorated floors. Through Balderstone, the prosecution introduced photographs that Smith took of the trailer during the search. The photos documented feces on the floor or walls of several rooms. The photos also documented clutter and trash throughout the residence. Both bedrooms had subflooring (or plywood) instead of flooring. With the photos, Balderstone testified that there was urine and feces on the subflooring or on saturated training pads. One photo depicted the kitchen, where, "[t]here [was] a dog kennel or animal crate . . . with clutter stacked on top." Another photo of the bathroom depicted a chihuahua standing in feces with feces visibly smeared on the wall. Balderstone testified that during the search, she wore a hazmat suit for her safety to avoid being bitten by fleas.

Smith confirmed that he took the photos and that the photos accurately represented the condition of the residence the date of the search warrant execution, including the depiction of excrement, clutter, and trash. But according to Smith there was no evidence of feces outside the trailer. Smith testified that he did not see feces, fencing, toys, or "any evidence that the dogs had been outside" at any time. He explained that during the seizure of the dogs, Saginaw Animal Control had to leave the dogs in the trailer because they had nowhere to safely keep them outside.

Smith unequivocally testified that Saginaw Animal Control removed 26 chihuahuas from the house. According to Smith, he personally counted the dogs multiple times and confirmed there were 26.[1] Balderstone signed as a witness to the return. Although Balderstone attempted to testify to the number of dogs seized, she admitted that she did not count the dogs herself, and her knowledge of the number of dogs was second hand.

Both Balderstone and Smith confirmed that the dogs had fleas. Smith was present for Dr. Cline's inspection and confirmed based on his observation that all 26 dogs had fleas. Balderstone testified that Saginaw Animal Control confirmed all 26 dogs had fleas with a flea comb at the shelter. She was familiar with fleas because of her work experience at the shelter.

Dr. Joseph Kline, the prosecution's third witness, offered a combination of fact and expert testimony regarding the condition of the dogs. Dr. Kline was employed as a veterinarian for Saginaw Animal Control and was qualified as an expert in veterinary medicine. He testified that he examined the chihuahuas the day of their seizure. According to Dr. Kline, "[e]very dog had fle[a]s," and the dogs were "anemic from blood loss from the fle[a] infestation." Dr. Kline also testified that some of the dogs also had ear infections, dental disease, and old corneal injuries. He testified that the photo of the dog standing in feces also depicted hair loss which was consistent with a parasite infestation. Dr. Kline acknowledges that the dogs did not appear starved and did not show signs of dehydration or torture, but his opinion was "without exception this was neglect."

---

[1] We observe that Smith also signed the search warrant return that documented 26 chihuahuas seized during the search, though the prosecution did not introduce this evidence at trial.

During his testimony, Dr. Kline testified about the impact of the physical space on the animals' care. He acknowledged that he had never been to Parkinson's trailer, but he reviewed photos taken the day of the search. He explained that animals have specific requirements, including food, water, shelter, "veterinary care," and "a clean environment to exist in." According to Dr. Kline, the condition of Parkinson's trailer could pose a hazard to an animal's health. Specifically, he testified that the presence of waste product which carries and spreads diseases is "detrimental to everyone" in the living environment, including animals.

Regarding ownership, possession, or custody of the animals, Smith testified that Parkinson "claimed that she had ownership of all the animals and she was the one taking care of them." Parkinson on the other hand claimed that her daughter Kimberly was primarily responsible for taking care of the animals, but that she "picked up after" the dogs and made sure the dogs had food and water. She claimed that some of the dogs were hers and others were Kimberly's or Don's.

Following the prosecution's case, defense counsel moved for a directed verdict. Defense counsel argued that the prosecutor failed to prove beyond a reasonable doubt that there were at least 25 animals. The trial court denied the motion, relying on Smith's testimony regarding the number of dogs.

Parkinson testified in her defense and was the only defense witness. Her testimony contradicted much of the prosecution witnesses' testimony. For example, she testified that there were only 20 dogs in the trailer. She claimed to know this because she counted the animals a week before the execution of the warrant. She also testified that the dogs were not all hers, some belonging to her daughter Kimberly and some belonging to her ex-husband. According to Parkinson, Kimberly was primarily responsible for taking care of the dogs. She admitted that she "picked up after" the dogs and made sure they had food and water. She testified that the "potty pads for the dogs were changed two to three times a day," but she conceded that the conditions in the house were unsatisfactory. She explained that she took care of them the best way she could.

The trial court found Parkinson guilty of animal cruelty involving 25 animals or more. At trial, the prosecution relied on both MCL 750.50(2)(a) (failure to provide adequate care) and MCL 750.50(2)(f) (negligently allowing an animal to suffer neglect, torture, or pain). The trial court did not explicitly state which subsection of MCL 750.50(2) it was applying. Its findings however unambiguously indicate that it applied MCL 750.50(2)(a) and 750.50(2)(e), which relates to abandonment and was not charged. Setting aside its references to abandonment under MCL 750.50(2)(e), the trial court correctly stated the elements for MCL 750.50(2)(a) and made findings on each element. Regarding the first element, ownership or possession, the trial court found that Parkinson was "a possessor, owner, or a person having charge or custody of all the animals," relying on the fact that Parkinson lived in the trailer with all the dogs and had the right to exercise control over the dogs. Regarding the second element, the trial court made findings regarding both "abandonment" and "adequate care," the two alternatives for the second element. Regarding adequate care, the trial court concluded that "the state of good health was compromised here and that there was a finding beyond a reasonable doubt that that standard was not met as was sanitary conditions . . . ." It highlighted the presence of feces, urine, filth, clutter, and garbage in the home. It also credited Dr. Kline's testimony that the space of the trailer was inadequate for the number of dogs in the home, regardless of clutter, and that parasite control would be virtually impossible.

The trial court later sentenced Parkinson to 60 months' probation. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a challenge to the sufficiency of the evidence supporting a conviction. *People v Speed*, 331 Mich App 328, 331; 952 NW2d 550 (2020). "When ascertaining whether sufficient evidence was presented in a bench trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt." *People v Kanaan*, 278 Mich App 594, 618; 751 NW2d 57 (2008). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Id*. at 619. In a bench trial, "[f]actual findings are sufficient as long as it appears that the trial court was aware of the issues in the case and correctly applied the law." *People v Legg*, 197 Mich App 131, 134; 494 NW2d 797 (1992). Moreover, "[t]he court need not make specific findings of fact regarding each element of the crime" so long as it applies the law correctly and sufficiently articulates its findings to satisfy MCR 2.517 and MCR 6.403. *Id*.; see also *People v Wardlow*, 190 Mich App 318, 320-321; 475 NW2d 387 (1991). Finally, this Court reviews de novo the interpretation and application of a statute. *People v Comer*, 500 Mich 278, 287; 901 NW2d 553 (2017).

To the extent this case requires us to interpret MCL 750.50, we review questions of law, including issues of statutory interpretation, de novo. *People v DeBono*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362041); slip op at 3.

> The overriding goal of statutory interpretation is to ascertain and give effect to the Legislature's intent. The touchstone of legislative intent is the statute's language. The words of a statute provide the most reliable indicator of the Legislature's intent and should be interpreted on the basis of their ordinary meaning and the overall context in which they are used. An undefined statutory word or phrase must be accorded its plain and ordinary meaning, unless the undefined word or phrase is a "term of art" with a unique legal meaning. [*Id*. at ___; slip op at 3 (citation omitted).]

"When an undefined statutory term has been the subject of judicial interpretation, this Court presumes that the Legislature used the particular term in a manner consistent with the prior construction." *Id*. at ___; slip op at 3 (citation and brackets omitted).

## III. SUFFICIENCY OF THE EVIDENCE

Parkinson argues that this Court should vacate her conviction because there was insufficient evidence of (1) ownership of the animals recovered, (2) her failure to provide adequate care as defined by MCL 750.50(1)(a), and (3) that there were 25 animals or more involved. We disagree and address each of the contested elements in turn.

A challenge to the sufficiency of evidence unpinning a conviction implicates due process. "Due process requires that a prosecutor introduce evidence sufficient to justify a trier of fact to conclude that the defendant is guilty beyond a reasonable doubt." *People v Tombs*, 260 Mich App 201, 206-207; 679 NW2d 77 (2003), aff'd 472 Mich 446 (2005). The prosecutor "is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince the jury 'in the face of whatever contradictory evidence the defendant may provide.' " *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000), quoting *People v Konrad*, 449 Mich 263, 273 n 6; 536 NW2d 517

(1995). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Nowack*, 462 Mich at 400 (quotation marks and citation omitted).

## A. ANIMAL CRUELTY STATUTE

Parkinson was convicted of one count of animal cruelty, specifically, failing to provide adequate care to 25 or more animals, MCL 750.50(2)(a) and (4)(e).[2] MCL 750.50(2) provides, in relevant part:

> (2) An owner, possessor, breeder, operator of a pet shop, or person having the charge or custody of an animal shall not do any of the following:
>
> (a) Fail to provide an animal with adequate care. [MCL 750.50(2)(a).]

" 'Adequate care' means the provision of sufficient food, water, shelter, sanitary conditions, exercise, *and* veterinary medical attention in order to maintain an animal in a state of good health." MCL 750.50(1)(a) (emphasis added).

The statute's penalty provision, MCL 750.50(4) provides enhanced penalties for more than 25 animals:

> (4) A person who violates subsection (2) is guilty of a crime as follows:
>
> * * *
>
> (e) If the violation involved 25 or more animals or the person has had 3 or more prior convictions for violating subsection (2), the person is guilty of a felony punishable by 1 or more of the following and may be ordered to pay the costs of prosecution:
>
> (*i*) Imprisonment for not more than 7 years.
>
> (*ii*) A fine of not more than $10,000.00.
>
> (*iii*) Community service for not more than 500 hours. [MCL 750.50(4)(e)(*i*) through (*iii*).]

Thus, as charged, the prosecution was required to prove three elements: first, that Parkinson owned, possessed, or had custody or charge of an animal, MCL 750.50(2); second, that Parkinson failed to provide the animal with adequate care, MCL 750.50(2)(a), 750.50(1)(a); and (3) that the offense involved twenty-five or more animals, MCL 750.50(4)(e). See MCL 750.50. See also M Crim JI 33.2.

---

[2] Parkinson was charged with both failing to provide adequate care, MCL 750.50(2)(a), and negligently allowing animals to suffer unnecessary neglect, torture, or pain, MCL 750.50(2)(f). The trial court made findings on adequate care, MCL 750.50(2)(a), and abandonment, MCL 750.50(2)(e), which was uncharged conduct. It did not address allowing animals to suffer neglect, torture or pain. We therefore focus our analysis only on adequate care.

-5-

## B. POSSESSION, OWNERSHIP, OR HAVING CHARGE OR CUSTODY

Parkinson's first argument is that there was insufficient evidence that she was the owner, possessor, or person having charge of the dogs seized at her trailer. We disagree.

MCL 750.50(2) applies to "[a]n owner, possessor, breeder, operator of a pet shop, or person having the charge or custody of an animal . . . ." The statute does not specifically define "owner," "possessor," or "charge or custody," so we apply the ordinary, everyday meaning for those words. *DeBono*, ___ Mich App at ___; slip op at 3. Regarding this element, the trial court's fact findings and legal conclusions focused almost exclusively on possession, so that is where we focus our review. In other criminal contexts, the Court has interpreted "possession" as having dominion or control over something. See, e.g., *People v Flick*, 487 Mich 1, 13; 790 NW2d 295 (2010) (defining possession in the context of child sexually abusive material as "the power or authority to control or exercise dominion over" the material); *People v Baham*, 321 Mich App 228, 247; 909 NW2d 836 (2017) (quotation marks and citation omitted) (holding that in the context of controlled substances, the element of possession "requires a showing of dominion or right of control over the drug with knowledge of its presence and character"). See also *People v Henderson*, 282 Mich App 307, 328-329; 765 NW2d 619 (2009) (interpreting a prior, but substantially similar, version of MCL 750.50(2) and noting that last antecedent to the clause "having the charge or custody of an animal" applies only to "person" and not "possessor," since "the resulting clause would be redundant because a 'possessor' in this instance is a person who has possession of an animal."). Dominion or control "need not be exclusive." *Flick*, 487 Mich at 14. Further, possession may be "either actual or constructive." *Id*. "Constructive possession exists if the defendant knew that the [property] was present and had the right to exercise control over it." *People v Williams*, 268 Mich App 416, 421; 707 NW2d 624 (2005). Furthermore, "[p]ossession may be joint, with more than one individual constructively possessing" something, and "constructive possession may be found even if the defendant is not the owner . . . ." *Id*.[3] The prosecution may prove possession with circumstantial evidence and reasonable inferences drawn from this evidence. *People v Nunez*, 242 Mich App 610, 615-616; 619 NW2d 550 (2000) (quotation marks and citation omitted).

So, to the extent Parkinson challenges the sufficiency of evidence related to ownership, we are not persuaded. To satisfy MCL 750.50(2), the trial court did not need to determine whether Parkinson was the actual owner of all 26 dogs because the statute encompasses owners *and* possessors, among others. See MCL 750.50(2). See also *Henderson*, 282 Mich App at 328-329 (distinguishing "owner" and "possessor" in a former but substantively similar version of the statute).

---

[3] The text of MCL 750.50(2) suggests that the phrase "person having the charge or custody of an animal" may not allow charge or custody held by a partnership, as opposed to an individual or formal organization. See MCL 750.50(2). See also *People v Mitchell*, unpublished per curiam opinion of the Court of Appeals, issued November 18, 2008 (Docket No. 279108) (holding that the trial court misconstrued MCL 750.50(2) because it misunderstood the modifying clause "having charge or custody of an animal" as applying to marital partnerships in addition to persons); *People v Otto*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362161); slip op at 12 n 11 (noting that unpublished decisions are not binding on this Court but may be considered for their persuasiveness). Because the parties have not addressed this nuance in the statute, and because we, like the trial court, focus our analysis on possession, it is unnecessary for us to address this.

Reviewing the evidence, and the trial court's findings, in the light most favorable to the prosecution, we conclude that the there was sufficient evidence of possession. The trial court determined that "[d]efendant possessed and had a [sic] custody of all the dogs" because she "lived at the location of 2944 Apollo Drive" and, "[b]y her own admission, she owned at least some of the dogs that were found in that house on that date of August 6, 2020." The trial court also determined that Parkinson was a possessor because all of the dogs lived together in the trailer, not separately. By her own testimony, there was sufficient evidence to show that Parkinson knew that the dogs were present and that she had the right to exercise control over them. She testified that she "picked up after" the dogs and provided them with food and water. And according to Smith, during a conversation with Parkinson at the execution of the search warrant, she claimed that she had ownership of all the animals and that she was the one taking care of them. The evidence, therefore, supported the trial court's finding that Parkinson possessed the 26 dogs.

## C. NUMBER OF ANIMALS

Related to Parkinson's argument on possession, ownership, and custody, Parkinson also argues that there was insufficient evidence on the number of dogs. We again disagree and defer to the trial court's finding that Parkinson failed to provide adequate care to 26 animals because the court's finding was rooted in its credibility determination related to both Parkinson and Smith. As stated, Parkinson disputed the number of dogs, claiming there were only 20. Smith, however, testified that he personally counted 26 dogs on multiple occasions. He was present at the search and some of the veterinarian exams with Dr. Kline. The trial court, therefore, was required to weigh the credibility of each witness to determine how many dogs there were. "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *Kanaan*, 278 Mich App at 619. Therefore, we defer to the trial court's finding that there were 25 animals or more.

## D. ADEQUATE CARE

Parkinson also argues that there was insufficient evidence that she failed to provide adequate care to the animals. She argues that the definition of "adequate care" found in MCL 750.50(1)(a) uses the conjunctive "and," requiring the prosecution provide that a defendant failed to provide each of the criteria contained in the definition to satisfy the charge. On this matter of first impression, we disagree. The trial court correctly concluded that adequate care requires an animal owner or possessor to *provide all* of the requirements contained in MCL 750.50(1)(a). It also correctly concluded that the *failure* to provide *any* or all of those items subjects the owner or possessor to criminal liability described in MCL 750.50(2)(a).

Here, there is no dispute that the animals were fed, watered, and provided shelter (to the extent that shelter is separate from sanitary conditions). The trial court relied on its finding that Parkinson failed to provide sanitary conditions and veterinary medical conditions. But Parkinson argues that it was also required to find that she failed to provide all of the listed conditions within the statutory definition for adequate care. In contrast, the prosecution argues that the failure to provide any one of the necessities listed in MCL 750.50(1)(a) is sufficient to support a finding of guilt under MCL 750.50(2)(a), and to hold otherwise would lead to an absurd result. We agree with the prosecution.

As stated, the statute defines adequate care as "the provision of sufficient food, water, shelter, sanitary conditions, exercise, and veterinary medical attention in order to maintain an animal in a state of good health." MCL 750.50(1)(a). It uses the conjunctive "and" which "generally denotes a joinder of terms[,] . . . whereas the word 'or' is a 'disjunctive, used to indicate a disunion, a separation, an

alternative . . . .' " *People v Allen*, 507 Mich 597, 607 n 16; 968 NW2d 532 (2021) (citation omitted). But " 'and' can also be used as a disjunctive if the context so requires." *Id.* (quotations marks and citation omitted). Here, MCL 750.50(1)(a) prescribes adequate care, or the bare essentials for an animal: food, water, shelter, veterinary care, and sanitary conditions. Parkinson's proposed construction pulls the relationship between MCL 750.50(1)(a) and MCL 750.50(2)(a) inside out. Under her proposed reading, she could totally deprive an animal of food and water, but as long as she provided a clean space and took the animal to the vet, the prosecution could not prove a charge under MCL 750.50(2)(a). This interpretation is contrary to the text and purpose of the statute. See MCL 750.50(1)(a) (stating the purpose of the components of the adequate care provision is to "maintain an animal in a state of good health"); MCL 750.50(1)(m) (" 'State of good health' means freedom from disease and illness, and in a condition of proper body weight and temperature for the age and species of the animal, unless the animal is undergoing appropriate treatment."). Section (1)(a) prescribes a list of requirements for maintaining good health. See MCL 750.50(1)(a). The failure to provide any one of them amounts to a failure to provide adequate care. See *id.*; MCL 750.50(2)(a).

This Court has yet to interpret the requirements for adequate care under MCL 750.50(1)(a) in a published decision, but this interpretation is consistent with prior unpublished cases that we find persuasive. See, e.g., *People v Wilkerson*, unpublished per curiam opinion of the Court of Appeals, issued October 20, 2015 (Docket No. 321351) (affirming conviction for "abandoning/cruelty of two or three animals," under MCL 750.50(4)(b), for failure to provide adequate care, where the defendant left dogs outside in 90-to-100-degree temperatures with only a single bucket of dirty water and not considering whether the defendant had provided sufficient food, veterinary care, or sanitary conditions); *People v Griffin*, unpublished per curiam opinion of the Court of Appeals, issued February 14, 2013 (Docket No. 308471) (affirming the defendant's conviction of failing to provide adequate care for 4 or more animals but fewer than 10 animals, under MCL 750.50(4)(c), because of unsanitary conditions, inadequate exercise, and lack of veterinary care, where evidence supported finding that the defendant failed to provide some but not all of the criteria provided in MCL 750.50(1)(a)).[4] Based on a plain reading of the applicable statutory language, we conclude that Parkinson's interpretation is untenable: a failure to provide any of the components comprising the provision of adequate care as defined by MCL 750.50(1)(a) constitutes a failure "to provide an animal with adequate care" within the meaning of MCL 750.50(2)(a).

When viewed in the light most favorable to the prosecution, there was sufficient evidence to demonstrate that Parkinson failed to provide adequate care to 26 dogs based on the unsanitary conditions, lack of veterinary care, and lack of exercise. First, the prosecution's evidence indicated that Parkinson's trailer was unsanitary, and Parkinson and her family kept the dogs only inside the trailer. The photo exhibits showed floors covered with garbage, clutter, urine, and feces. Smith testified that there was no fencing outside the trailer to keep the animals, testimony that was corroborated by Parkinson's own admissions. This indicated that the dogs remained inside. Dr. Kline testified that the condition of the trailer, combined with the size and number of dogs, created a health hazard for the dogs and people in the trailer. Specifically, he explained how the presence of waste products and trash created the potential for

---

[4] See *Otto*, ___ Mich App at ___; slip op at 12 n 11 (noting that unpublished decisions are nonbinding but have persuasive value).

-8-

diseases and parasites.  Therefore, the unsanitary conditions of Parkinson's trailer amounted to a failure to provide adequate care.

The evidence also supported the court's finding that Parkinson failed to provide adequate care by failing to provide veterinary care.  Balderstone testified that she had noticed that all of the dogs had fleas. Dr. Kline testified that all the dogs recovered were anemic from blood loss due to the flea infestation and some of the dogs had other health problems, like ear infections, dental disease, and old corneal injuries. This contradicted Parkinson's testimony that the dogs received veterinary care.  The evidence supported a finding of lack of adequate care on this basis.

Finally, the evidence supports a finding that the dogs lacked sufficient exercise.  The trial court determined that the dogs "never exercised in common use of that word with animals."  Smith testified that he walked around the exterior of the home, and he agreed that he did not see fencing, toys, feces, or "any evidence that the dogs had been outside" at any time.  Parkinson admitted that the dogs did not go outside because they "had nowhere to let them out."  Taken in the light most favorable to the prosecution, the evidence demonstrated that Parkinson failed to provide adequate care by failing to exercise the dogs.

In sum, we reject Parkinson's argument that MCL 750.50(2)(a) requires proof that a defendant failed to provide each of the criteria included in MCL 750.50(1)(a).  We conclude that the failure to provide at least one of the criteria is sufficient, and the evidence was sufficient in this case.

We affirm.

/s/ Noah P. Hood
/s/ James Robert Redford
/s/ Allie Greenleaf Maldonado