*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

AMANDA FAYE TROSPER,

Defendant-Appellant.

UNPUBLISHED
January 18, 2024

No. 361192
Antrim Circuit Court
LC No. 21-005063-FC

Before: GARRETT, P.J., and LETICA and MALDONADO, JJ.

PER CURIAM.

A jury found defendant guilty of fourth-degree child abuse, MCL 750.136b(7)(b). The trial court sentenced defendant to serve 11 months in jail. Defendant appeals by right. We affirm.

Four-year-old CP was staying at the home of his father, Raymond Pease, and his stepmother, defendant, for parenting time over the Labor Day weekend in 2020. When CP's mother, Shantelle Rauszer, dropped him off, nothing was physically wrong with him. On the last morning of CP's visit, defendant told Pease that CP had fallen earlier that morning. Pease noticed that CP's cheeks were red and that he had a cut, so Pease put Neosporin on CP's face and put him down for a nap. When CP woke up, his face looked like it was "sweating." Pease thought CP was having a reaction to the Neosporin. Defendant contacted Rauszer, telling her that CP had fallen and they believed he was having an allergic reaction to the Neosporin they had applied to his face. When Rauszer picked up CP, however, his face looked like it had been burned. Rauszer took CP to the hospital.

Registered nurse Randi Hunter saw CP after they came in. Hunter noted that CP "had very extensive injuries" that looked like a burn. An emergency room physician, Dr. Bevin Clayton, also treated CP. Dr. Clayton testified that CP's injury was not consistent with any reaction to Neosporin in his experience. Instead, Dr. Clayton opined that CP's injury was either a thermal or a chemical burn. And, after Hunter asked CP about what had happened, CP reported that defendant poured hot water on him in the kitchen, it was not an accident, and defendant was yelling at him when she did it. Hunter contacted the police because she suspected child abuse.

Antrim County Sheriff's Office Detective Brian Knight interviewed defendant. According to Detective Knight, defendant said that CP fell on his face outside. However, once he told defendant that CP had been burned, defendant told Detective Knight that she made three cups of hot chocolate for CP and one of the cups spilled on him. Defendant told Detective Knight that CP spilled the first two cups on the floor. When defendant made CP a third cup, he started to spill it on the floor, but defendant, angry at that point, hit it out of his hands. Defendant admitted in a written statement to police that CP "grabbed it and went to dump it again. So I swung my hand up and hit the cup, splashing it on him." Pease testified that eventually defendant told him that

> she was making [CP] hot cocoa, and that she gave him a glass of cold water to drink before she gave him that. And then he dumped it on the floor, and then she picked up the cup. She tried to give him more cold water, and in the process he went to grab the hot cocoa, which was not ready, and she panicked and hit it and knocked it into his face.

Defendant testified that she woke CP up at midnight to go to the bathroom. After CP went to the bathroom, he said that he was thirsty and indicated that he wanted hot chocolate. Defendant put a cup of water in the microwave and gave CP another cup of water at the same time. After she put the water in the microwave, she noticed that CP had spilled the first cup of water onto the floor. CP subsequently spilled a second cup of water. After heating the water, defendant "grabbed" his cup, "dumped" the water into it, and placed it on the counter. CP grabbed the cup of hot water and defendant "swung" her arm to grab it but it spilled onto his face. Defendant testified that she did not intend to spill the water on CP and that she intended "[t]o retrieve the cup from him before it got on him." Defendant admitted that she put the cup of water in the microwave, heated the water, set it on the counter within reach of CP, and intentionally "went for the cup" when CP grabbed it.

The jury received instructions for both second-degree child abuse and fourth-degree child abuse. The jury found defendant guilty of the lesser offense. This appealed followed.

Defendant argues that this Court should vacate her fourth-degree child abuse conviction because the evidence was insufficient to prove beyond a reasonable doubt that she knowingly or intentionally committed an act that under the circumstances posed an unreasonable risk of harm to CP. We disagree.

The Due Process Clauses of the United States and Michigan Constitutions guarantee a criminal defendant the right to due process. US Const, Ams V and XIV; Const 1963, art 1, § 17. "Due process requires that a prosecutor introduce evidence sufficient to justify a trier of fact to conclude that the defendant is guilty beyond a reasonable doubt." *People v Parkinson*, ___ Mich App ___, ___ ; ___ NW2d ___ (2023) (Docket No. 362683); slip op at 4, quoting *People v Tombs*, 260 Mich App 201, 206-207; 679 NW2d 77 (2003), aff'd 472 Mich 446; 697 NW2d 494 (2005) (quotation marks omitted). "Challenges to the sufficiency of the evidence are reviewed de novo." *People v Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). "In determining whether sufficient evidence exists to sustain a conviction, [an appellate court] reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted). This "standard of review is deferential: a reviewing court is *required* to draw all reasonable inferences and make credibility

choices in support of the jury verdict." *Id*., quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks omitted; emphasis in *Oros*). The prosecution does not need to "negate every reasonable theory consistent with innocence," but is "bound to prove the elements of the crime beyond a reasonable doubt." *Nowack*, 462 Mich at 400. "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id*. (quotation marks and citation omitted). "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Chelmicki*, 305 Mich App 58, 66; 850 NW2d 612 (2014) (quotation marks and citation omitted; alteration in *Chelmicki*).

In relevant part, the fourth-degree child abuse statute provides:

> A person is guilty of child abuse in the fourth degree if any of the following apply:
>
> * * *
>
> (b) The person knowingly or intentionally commits an act that under the circumstances poses an unreasonable risk of harm or injury to a child, regardless of whether physical harm results.

A conviction of fourth-degree child abuse, MCL 750.136b(7)(b), requires proof of the following elements: (1) defendant was the parent or guardian, or had care or custody of or authority over, the child when the abuse allegedly happened;[1] (2) defendant knowingly or intentionally committed an act that under the circumstances posed an unreasonable risk of harm or injury to the child, although actual injury is not necessary; and, (3) the child was at the time under the age of 18.[2] See M Crim JI 17.23.[3] In MCL 750.136b(7)(b), "[t]he phrase 'knowingly or intentionally' modifies the phrase 'commits an act,' not the phrase 'poses an unreasonable risk of harm or injury to a child.' " *People v Isrow*, 339 Mich App 522, 528; 984 NW2d 528 (2021). Accordingly, fourth-degree child abuse is a general intent crime, and "the act must be done 'knowingly or intentionally,' but the defendant need not know or intend that the act pose an 'unreasonable risk of harm or injury to a child.' " *Id*. Elements one and three are not in dispute in this case.

---

[1] MCL 750.136(1)(d) defines a "person" as the "child's parent or guardian or any other person who cares for, has custody of, or has authority over a child regardless of the length of time that a child is cared for, in the custody of, or subject to the authority of that person."

[2] MCL 750.136(1)(a) defines a "child" as "a person who is less than 18 years of age and is not emancipated by operation of law. . . ."

[3] We acknowledge that even though the standard criminal jury "instructions do not have the force and effect of a court rule, their use is required by MCR 2.512(D) unless the court determines that an instruction does not accurately reflect the state of the law, or circumstances of the case require a variance or additional instructions." Mich Crim JI. The current jury instruction on fourth-degree child abuse accurately reflects the statutory elements.

The prosecutor's theory in this case was that defendant knowingly or intentionally provided hot water from the microwave to CP after having seen him dump two cups of water and, additionally, that she intentionally knocked the cup of hot water out of CP's hand. According to the prosecution, these actions posed an unreasonable risk that CP would get burned.

In *Isrow*, 339 Mich App at 525, the defendant was convicted of fourth-degree child abuse for throwing a set of keys, which hit his four-year-old child in the back of the head. Although the defendant testified that he did not throw the keys with the intention to hit his child, defendant admitted that he intentionally tossed the keys and acknowledged that he "threw the keys in the direction of where his daughter had been standing seconds earlier." *Id*. This Court held that the evidence was sufficient for the jury to find beyond a reasonable doubt that the defendant knowingly or intentionally threw the keys, which posed an unreasonable risk of harm to the child. *Id*. at 528. According to the Court, the defendant's admission that he acted intentionally was sufficient to establish his intent. See *id*. Additionally, "[t]hrowing a set of keys, knowing a child had been standing in the vicinity of the location in which the keys were thrown seconds before, poses an unreasonable risk of harm or injury to a four-year-old child." *Id*.

In this case, a jury could have rationally concluded that defendant knowingly or intentionally committed an act that posed an unreasonable risk of harm or injury to CP when she placed a cup of hot water on the counter within the reach of CP after having just seen him spill two cups of water. Like in *Isrow*, 339 Mich App at 528, in which this Court held that throwing keys in the vicinity of where a child stood previously posed an unreasonable risk of harm or injury, placing a cup of hot water within the reach of a child who had spilled water twice before posed an unreasonable risk of harm or injury to CP. Similarly, a jury could have rationally concluded that defendant knowingly or intentionally committed an act that posed an unreasonable risk of harm or injury to CP when she intentionally hit the cup of hot water when CP grabbed it. The evidence was sufficient for the jury to draw the inference that defendant intended the act that posed the risk of harm or injury, *Isrow*, 339 Mich App at 528, and that defendant acted knowingly or intentionally, see *Chelmicki*, 305 Mich App at 66. Viewing the evidence in the light most favorable to the prosecution, the evidence was sufficient to support the jury's verdict finding defendant guilty of fourth-degree child abuse.[4] *Oros*, 502 Mich at 239.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Anica Letica
/s/ Allie Greenleaf Maldonado

---

[4] In light of our conclusion, we do not address the prosecution's contention that there was sufficient evidence to support a conviction under MCL 750.136b(7)(a) because defendant acted recklessly. Furthermore, we note that this alternate theory was not presented to the jury during trial and was not included on the jury verdict form.